# In the United States Court of Federal Claims

No. 10-244
Filed: October 29, 2013

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| * | Jurisdiction, 28 U.S.C. § 1508 (re: 28 U.S.C. § 6226 petition); |
| * | Summary Judgment, RCFC 56(c); |
| * | Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, 96 Stat. 324 (1982) (codified as amended in scattered sections of 26 U.S.C.); |
| * | 26 U.S.C. § 743 (adjustment to basis of partnership property); |
| * | 26 U.S.C. § 754 (election to adjust partnership basis); |
| * | 26 U.S.C. § 6223(a)(2) (notice to partners of administrative adjustment); |
| * | 26 U.S.C. § 6225(a)(1) (re: partnership item assessment period); |
| * | 26 U.S.C. § 6226(a) (time period to readjust partnership items); |
| * | 26 U.S.C. § 6229(c)(1) (time period for administrative adjustment of a final partnership item); |
| * | 26 U.S.C. § 6501(c)(1) (exceptions to time period for false or fraudulent returns, with the intent to evade tax). |

BASR PARTNERSHIP, by and through,
WILLIAM F. PETTINATI, SR.,
Tax Matters Partner,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Thomas A. Cullinan**, Sutherland Asbill & Brennan LLP, Atlanta, Georgia, Counsel for Plaintiff.

**Jacob E. Christensen**, United States Department of Justice, Tax Division, Court of Federal Claims Section, Washington, D.C., Counsel for the Government.

### REVISED MEMORANDUM OPINION AND FINAL ORDER

**BRADEN**, *Judge*.

This case concerns a petition filed in the United States Court of Federal Claims, pursuant to 28 U.S.C. § 1508, for a readjustment and refund of federal taxes paid, plus interest. The pending motion for summary judgment requests that the court determine that the refund, plus interest, is due, because a January 20, 2010 Internal Revenue Service ("IRS") Notice of Final Partnership Administrative Adjustment ("FPAA") was timebarred by 26 U.S.C. § 6229(c)(1). In

the alternative, the pending motion argues that the FPAA is timebarred, because none of the taxpayers had the requisite intent to trigger the extended statute of limitations period in 26 U.S.C. § 6501(c)(1).

# I.    RELEVANT FACTUAL BACKGROUND.[1]

In 1999, Erwin Mayer, a partner in the law firm of Jenkens & Gilchrist, advised William F. Pettinati, Sr. and Mr. Pettinati's accountant, John C. Malone, about the tax consequences of the sale of Page Printing Co. ("Page"). Page was a business owned by 1) Mr. Pettinati, 2) his wife and 3) gift trusts for the benefit of their sons, William F. Pettinati, Jr. and Andrew Pettinati ("the Gift Trusts"). Gov't Ex. 5; Pl. PFOF ¶ 14; Gov't Resp. App. C at 46 (9/26/12 William F. Pettinati, Sr. Dep.).

Mr. Malone summarized his understanding of the tax plan, indicating that it included the following steps:

1. A Family General Partnership will be created.
2. A short sale of Treasury securities is conducted by each family member.
3. [The] stock of [Page] and the short sale will be contributed by the four family stockholders into the family partnership.
4. An S-corporation[2] will be created.
5. The partnership interests will be contributed to the S-corporation.

---

[1] The relevant facts discussed herein were derived from: the April 16, 2010 Complaint ("Compl."); BASR Partnership's December 11, 2012 Proposed Findings Of Undisputed Material Facts ("Pl. PFOF"); the Government's January 2, 2013 Proposed Findings Of Uncontroverted Fact ("Gov't PFOF"); the appendices to the Government's January 22, 2013 Response To Plaintiff's Motion For Summary Judgment ("Gov't Resp. App. A-K"), including exhibits contained in Gov't Resp. App. G ("Gov't Exs. 1-95"); and BASR's February 11, 2013 Reply.

[2] Under the I.R.C., "the term 'S corporation' means, with respect to any taxable year, a small business corporation for which an election under section 1362(a) is in effect for such year." I.R.C. § 1361(a)(1). A "small business corporation," in turn, is defined as a domestic corporation which is not an ineligible corporation and which does not:

(A) have more than 100 shareholders,

(B) have as a shareholder a person (other than an estate, a trust described in subsection (c)(2), or an organization described in subsection (c)(6)) who is not an individual,

(C) have a nonresident alien as a shareholder, and

(D) have more than 1 class of stock.

26 U.S.C. § 1361(b)(1).

6. Such contribution triggers the IRC §754 basis step-up for the Page stock.

7. The short sale is closed out, creating a minor gain or loss.

8. The Page stock may then be sold to your printing business buyer by the family partnership.

Gov't Ex. 5 at G12.

On May 24, 1999, the BASR Partnership ("BASR") was formed as a general partnership under the laws of Texas.[3]  Pl. PFOF ¶ 1.  The partners in BASR were:

Bingle Investments LLC, a Delaware limited liability company, the sole member of which was William F. Pettinati, Sr., who also was designated BASR's Tax Matters Partner, as defined in I.R.C. § 6231(a)(7);

Falba Investments LLC, a Delaware limited liability company, the sole member of which was Virginia Pettinati, William F. Pettinati, Sr.'s wife;

Winding Oak Investments LLC, a Delaware limited liability company, the sole member of which was Pettinati 1998 Gift Trust fbo/William F. Pettinati, Jr.; and

Watermill Investments LLC, a Delaware limited liability company, the sole member of which was Pettinati 1998 Gift Trust fbo/Andrew Pettinati.

Pl. PFOF ¶¶ 2, 4.

On June 10, 1999, each of BASR's partners contributed cash and short positions in United States Treasury Notes to BASR.  Pl. PFOF ¶ 13.  "BASR's partners took the position that the contribution of the short positions in U.S. Treasury Notes increased the partners' outside bases[4] in BASR by approximately $6,638,100."  Pl. PFOF ¶ 13. On June 12, 1999, each of the

---

[3] The Government contends that BASR was not a valid partnership for federal tax purposes and that the partnership agreement was not signed until July 15, 1999. Gov't PFOF at 18.

[4] "The term 'outside basis' . . . refer[s] to the aggregate adjusted bases of all of the partners' interests in the partnership."  1 ARTHUR B. WILLIS & PHILIP F. POSTLEWAITE, PARTNERSHIP TAXATION § 5.04[1] (7th ed. 2011).  Section 754 provides that the partnership can elect to step up its basis as a result of a transfer of interest by sale or exchange, according to I.R.C. § 743.  Section 743 provides, in relevant part:

In the case of a transfer of an interest in a partnership by sale or exchange or upon the death of a partner, a partnership with respect to which the election provided in section 754 is in effect or which has a substantial built-in loss immediately after such transfer shall--

(1) increase the adjusted basis of the partnership property by the excess of the basis to the transferee partner of his interest in the

3

aforementioned partners contributed ninety-nine percent of their respective interests in BASR, as a capital contribution to Cypress Investments Inc., a Delaware corporation, resulting in the termination of the May 24, 1999 BASR and the creation of a new BASR.[5]  Pl. PFOF ¶¶ 3, 4.  On the same date, Mr. Pettinati, Sr., his wife, and the Gift Trusts contributed their Page Printing Company stock ("Page stock") to the new BASR.[6]  Pl. PFOF ¶ 12.  On or around August 17, 1999, BASR sold its Page stock to Nationwide Graphics, Inc. ("Nationwide") for $4,828,771 and received a promissory note from Nationwide, then valued at $2,069,474.  Pl. PFOF ¶ 12.

Subsequently, Mr. Pettinati, in his capacity as the Tax Matters Partner, filed the BASR partnership return for the year ended June 12, 1999, and the IRS stamped the return as received on October 12, 2000.  Pl. PFOF ¶ 19(a).  He also filed the BASR partnership return for the year ended December 12, 1999, and the IRS stamped the return as received on October 12, 2000.  Pl. PFOF ¶ 19(b).  In addition, Mr. and Mrs. Pettinati filed a joint individual income tax return for 1999, which was stamped as received on October 12, 2000.  Pl. PFOF ¶ 19(c).  William F. Pettinati, Jr., as trustee of the Pettinati 1998 Gift Trust F/B/O William F. Pettinati, Jr., also filed the trust's income tax return for 1999, which was stamped as received on October 18, 2000.  Pl. PFOF ¶ 19(d).  And Andrew Pettinati, as trustee of the Pettinati 1998 Gift Trust F/B/O Andrew Pettinati, filed the trust's income tax return for 1999, which was stamped as received on October 12, 2000.  Pl. PFOF ¶ 19(e).  Likewise, William F. Pettinati, Sr. filed Cypress Investments, Inc.'s income tax return for 1999, which was stamped as received on October 12, 2000.  Pl. PFOF ¶ 19(f).  All of the aforementioned federal tax returns were prepared by Mr. Malone, a certified public accountant and partner in the firm Malone & Bailey PLLC.  Pl. PFOF ¶ 15.  In addition, Mr. Malone signed the tax returns of BASR and its partners; not Jenkens & Gilchrist.  Pl. PFOF ¶ 18.[7]

---

partnership over his proportionate share of the adjusted basis of the partnership property[.]

26 U.S.C. § 743(b).

"The term 'inside basis' . . . refer[s] to the aggregate adjusted bases of all of the partnership's property."  1 ARTHUR B. WILLIS & PHILIP F. POSTLEWAITE, PARTNERSHIP TAXATION § 5.04[1] (7th ed. 2011).

[5] The Government contends that the new BASR was not a valid partnership.  Gov't PFOF at 19.

[6] The Government contends that these contributions occurred on or after June 16, 1999.  Gov't PFOF at 21.

[7] The extent of Mr. Malone's role in preparing BASR's federal income tax returns is in dispute.  *Compare* Pl. PFOF ¶ 17 ("[W]henever John Malone disagreed with the advice of Jenkens & Gilchrist regarding the reporting of transactions on the tax returns, John Malone's determination prevailed[.]"), *with* Gov't PFOF at 24-25 ("[T]here is no instance in which 'Malone's determination prevailed' over the instructions he received regarding the manner in which the tax scheme should be reported to the IRS[.]").

On August 8, 2006, the IRS initiated an audit of BASR's returns for the tax years ended June 12, 1999 and December 22, 1999.  Pl. PFOF ¶ 20.

On January 20, 2010, the IRS issued a Final Partnership Administrative Adjustment ("FPAA") for the tax years ended June 12, 1999 and December 22, 1999.  Pl. PFOF ¶ 22.

## II.    PROCEDURAL HISTORY.

On April 16, 2010, BASR, by and through its Tax Matters Partner, filed a Complaint in the United States Court of Federal Claims seeking a refund of $735,533 on federal taxes paid, plus interest.  Compl. ¶ 7(a).  The Complaint alleges that the January 20, 2010 FPAA was untimely, pursuant to I.R.C. §§ 6229, 6501, and that no penalties may be assessed, pursuant to I.R.C. § 6662, because the IRS's disallowance of tax benefits was not attributable to a valuation misstatement.  Compl. ¶¶ 7(c), (d).  In addition, the Complaint alleges that the IRS erred in determining that:

> (i) neither BASR nor its partners established the existence of BASR as a partnership as a matter of fact;
> (ii) BASR is disregarded because it had no business purpose other than tax avoidance, lacked economic substance, and constitutes an economic sham for federal income tax purposes;
> (iii) the transactions giving rise to the basis in the stock of [Page] claimed on the federal income tax returns of the partners of BASR are disregarded because they had no business purpose other than tax avoidance, lacked economic substance, and constituted an economic sham for federal income tax purposes;
> (iv) BASR violated the intent of Subchapter K of the Code and, consequently, pursuant to Treas. Reg. Sec. 1.701-2, all transactions engaged in by BASR are treated as engaged in directly by its partners, the U.S. Treasury Note positions contributed to or assumed by BASR are treated as never having been contributed to or assumed by BASR, and any gains or losses realized by BASR on such positions are treated as having been realized by the partners;
> (v) BASR violated the intent of Subchapter K of the Code and pursuant to Treas. Reg. Sec. 1.701-2, BASR should be disregarded and all transactions engaged in by BASR should instead be treated as engaged in directly by its partners;
> (vi) neither BASR nor its partners entered into the U.S. Treasury Note positions or purchased the U.S. Treasury Notes with a profit motive for purposes of Code Section 165(c)(2);
> (vii) the U.S. Treasury Note positions constitute an arrangement under Code Section 465(b)(4) to limit the exposure to risk of loss, and neither BASR nor its partners established any other amounts considered to be at risk that would allow the partners to deduct losses arising from or in connection with BASR;
> (viii) even if the proceeds of the U.S. Treasury Note positions are treated as contributed to BASR by its partners, the amount treated as contributed should be reduced by the amounts paid by the partners for the purchase of other U.S.

Treasury Note positions, and the partners' bases in BASR should be reduced accordingly;

(ix) the adjusted bases of the assets contributed to BASR are not established under Code Section 723, and the partners' adjusted bases in their respective partnership interests are not established in an amount greater than zero;

(x) for purposes of determining gain or loss from the sale, exchange, or liquidation of BASR interests, the partners' bases are not established in an amount greater than zero;

(xi) the obligation to close short sales of U.S. Treasury Notes transferred to BASR constituted liabilities for purposes of Code Section 752;

(xii) the assumption of obligations to close short sales of U.S. Treasury Notes by BASR constituted a constructive contribution of cash by the partners under Code Sections 722 and 752(a);

(xiii) the assumption of obligations to close short sales of U.S. Treasury Notes by BASR constituted a constructive distribution of cash to the partners under Code Sections 733(1) and 752(b);

(xiv) BASR's election to adjust the basis of its assets under Code Section 743(b) adjusted the partners' basis by $0, as there was no excess of outside over inside basis;

(xv) the adjustments of partnership items of BASR for the tax years ending June 12, 1999 and December 22, 1999 are attributable to a tax shelter for which no substantial authority has been established or for which there was no showing of reasonable belief by BASR or its partners that the position taken was more likely than not the correct treatment of the transactions; and

(xvi) the underpayments of tax were attributable to substantial understatements of income tax, gross valuation misstatements, or negligence resulting in the imposition of penalties pursuant to Code Section 6662.

Compl. ¶ 7(b).

On July 16, 2010, the Government filed a Motion To Stay Proceedings until the United States Court of Appeals for the Federal Circuit issued a decision in *Grapevine Imports, Ltd. v. United States*, No. 2008-5090, since an issue in that case was whether an alleged overstatement of basis by a partnership was an omission from gross income for purposes of I.R.C. §§ 6501(e) or 6229(c)(1). On July 22, 2010, the court denied the Government's July 16, 2010 Motion because BASR did not join in the Government's Motion. On August 10, 2010, the Government filed an Answer. On August 31, 2010, BASR filed a Response.

On October 1, 2010, the parties filed a Joint Preliminary Status Report. On October 7, 2010, the court filed a Scheduling Order.

On March 11, 2011, our appellate court held in *Grapevine Imports, Ltd. v. United States* that an overstatement of basis constitutes an omission from gross income for the purposes of I.R.C. § 6229(c)(2). *See Grapevine Imports, Ltd. v. United States*, 636 F.3d 1368, 1384 (Fed. Cir. 2011), *vacated*, 132 S. Ct. 2099 (2012).

On May 13, 2011, the parties filed a Joint Motion To Stay until, *inter alia*, the United States Court of Appeals for the Federal Circuit rendered a decision on the request for rehearing and rehearing *en banc*. On May 16, 2011, the court granted the May 13, 2011 Motion. On June 6, 2011, the United States Court of Appeals for the Federal Circuit denied the request for rehearing and rehearing *en banc*.

On June 25, 2012, the parties filed a Joint Status Report, in which the Government acknowledged that the first defense asserted in the August 10, 2010 Answer, *i.e.*, that the statute of limitations remained open, because BASR's overstatement of its basis in Page was a substantial omission from gross income, was "no longer viable" in light of the United States Supreme Court's decision in *United States v. Home Concrete & Supply LLC*, 132 S. Ct. 1836 (2012) (holding that an overstatement of basis in sold property does not constitute an omission from income, for statute of limitations purposes). On June 29, 2012, the court lifted the May 16, 2011 stay.

On September 4, 2012, BASR filed a Motion To Compel answers to interrogatories. On the same day, the Government filed a Motion For A Protective Order. Following a hearing on September 6, 2012, the court granted the Government's September 4, 2012 Motion, rendering BASR's September 4, 2012 Motion moot.

On November 16, 2012, BASR filed a Motion For Summary Judgment ("Pl. Mot."), together with exhibits ("Pl. Exs. A–V"). On January 22, 2013, the Government filed a Response ("Gov't Resp."), with appendices and exhibits. On February 11, 2013, BASR filed a Reply ("Pl. Reply") and exhibits.

On November 16, 2012, BASR filed Proposed Findings Of Undisputed Material Facts. On January 22, 2013, the Government filed Proposed Findings Of Uncontroverted Fact.[8] On February 11, 2013, BASR filed a Response.

On March 5, 2013, the Government filed a Motion For Leave To File A Memorandum Of Supplemental Authority ("Gov't Supp. Memo"). On March 21, 2013, BASR filed a Response ("Pl. Supp. Memo").

On July 29, 2013, the court heard oral argument on BASR's Motion ("7/29/13 TR at 1–71").

On September 13, 2013, BASR filed a Motion For Leave To File A Memorandum Of Applicable Supplemental Authority, in which it advised the court of a recent decision by the United States Court of Appeals for the Fifth Circuit. On September 27, 2013, the Government filed a Response.

---

[8] In the Government's Proposed Findings of Uncontroverted Fact, it states that the "United States *does not assert* that the *Pettinatis* (William Sr., Virginia, William Jr., and Andrew) *themselves* possessed an 'intent to evade tax' within the meaning of § 6501(c)(1)." Gov't PFOF at 27 (emphasis added).

### III.     DISCUSSION.

#### A.     Jurisdiction.

I.R.C. § 6226(a)(3) provides that the tax matters partner, within ninety days after the day on which a FPAA is mailed to the tax matters partner, "may file a petition for a readjustment of the partnership items for such taxable year with . . . the [United States] Court of Federal Claims." I.R.C. § 6226(a)(3).   Congress has afforded the United States Court of Federal Claims "jurisdiction to hear and to render judgment upon any petition under section 6226 . . . of the Internal Revenue Code of 1986."   28 U.S.C. § 1508.

BASR's April 16, 2010 Complaint was filed by William F. Pettinati, Sr., in his capacity as the tax matters partner, eighty-six days after the IRS filed the January 20, 2010 FPAA. Compl. ¶ 2.   Therefore, the court has jurisdiction to adjudicate the claims alleged therein.   *See Stobie Creek Investments LLC v. United States*, 608 F.3d 1366 (Fed. Cir. 2010) (authorizing adjudication of claims brought by and through the tax matters partner under I.R.C. § 6226).

#### B.     Standing.

The United States Supreme Court has held that "the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin,* 422 U.S. 490, 498 (1975).   Standing must be determined "as of the commencement of suit." *Rothe Dev. Corp. v. Dep't of Def.,* 413 F.3d 1327, 1334 (Fed. Cir. 2005).   The party invoking federal jurisdiction bears the burden of establishing standing. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992).   Specifically, "a plaintiff must show [that] it has suffered an 'injury in fact' that is . . . concrete and particularized and . . . actual or imminent, not conjectural or hypothetical; . . . the injury is fairly traceable to the challenged action of the defendant; and . . . it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.,* 528 U.S. 167, 180–81 (2000) (citations omitted).

The April 16, 2010 Complaint alleges that BASR has suffered an "injury in fact" that is concrete and particularized, traceable to the IRS's filing the January 20, 2010 FPAA, and redressable by a favorable decision.   Compl. ¶¶ 1–7.   Accordingly, BASR, through its tax matters partner, has established standing to seek an adjudication of the claims alleged in the April 16, 2010 Complaint.

#### C.     Standard Of Review For Summary Judgment.

On a motion for summary judgment, the moving party must establish that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *See Duramed Pharms., Inc. v. Paddock Labs., Inc.,* 644 F.3d 1376, 1380 (Fed. Cir. 2011); *see also* RCFC 56(c).   Only genuine disputes of material fact that might affect the outcome of the suit preclude entry of summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) ("As to materiality, the substantive law will identify which facts are material.   Only disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment.   Factual disputes that are irrelevant or unnecessary will not be counted.").   The "existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."   *Id.* at 247-48.   "Courts are required to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'"   *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

### D.   The Relevant Statutes.

The relevant statues in this case are I.R.C. § 6229 and I.R.C. § 6501.

I.R.C. § 6501, in relevant part, provides:

(a) General rule.--Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) or, if the tax is payable by stamp, at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period. For purposes of this chapter, the term "return" means the return required to be filed by the taxpayer (and does not include a return of any person from whom the taxpayer has received an item of income, gain, loss, deduction, or credit).

* * *

(c) Exceptions.--
        (1) False return.--In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time.

26 U.S.C. § 6501(a), (c)(1).

I.R.C. § 6229, in relevant part, provides:

(a) General rule.--Except as otherwise provided in this section, the period for assessing any tax imposed by subtitle A with respect to any person which is attributable to any partnership item (or affected item) for a partnership taxable year shall not expire before the date which is 3 years after the later of--

        (1) the date on which the partnership return for such taxable year was filed, or
        (2) the last day for filing such return for such year (determined without regard to extensions).

* * *

(c) Special rule in case of fraud, etc.--

(1) False return.--If any partner has, with the intent to evade tax, signed or participated directly or indirectly in the preparation of a partnership return which includes a false or fraudulent item—

(A) in the case of partners so signing or participating in the preparation of the return, any tax imposed by subtitle A which is attributable to any partnership item (or affected item) for the partnership taxable year to which the return relates may be assessed at any time, and

(B) in the case of all other partners, subsection (a) shall be applied with respect to such return by substituting "6 years" for "3 years".

26 U.S.C. § 6229(a), (c)(1).

### E.   Issues Raised By Plaintiff's November 16, 2012 Motion For Summary Judgment.

#### 1.   The Parties' Arguments

BASR's November 16, 2012 Motion For Summary Judgment raises two interrelated issues. First, whether the IRS's January 20, 2010 FPAA was timebarred, because I.R.C. § 6229(c)(1), instead of I.R.C. § 6501(c)(1), governs the period within which the IRS may issue a FPAA. Second, assuming, *arguendo*, that I.R.C. § 6501(c)(1) governs IRS's issuance of a FPAA, that statute does not apply in this case, because the Government does not contend that the taxpayer had "the intent to evade tax" or that the taxpayer "signed or participated directly or indirectly in the preparation of a partnership return which includes a false or fraudulent item." I.R.C. § 6229(c)(1).

BASR recognizes that Congress authorized the IRS to assess federal taxes, "at any time" if "any partner has, with the intent to evade tax, signed or participated directly or indirectly in the preparation of a partnership return which includes a false or fraudulent item[.]" I.R.C. § 6229(c)(1). And, I.R.C. § 6229(c)(1) requires that at least one partner in a partnership must have the intent to evade the payment of federal taxes in order for the partnership return to be considered fraudulent for purposes of the extended statute of limitations. Pl. Mot. at 11-12 (citing *Transpac Drilling Venture 1983-2 v. United States*, 83 F.3d 1410, 1415 (Fed. Cir. 1996) (The "purpose of the 'intent to evade taxes' requirement [in I.R.C. § 6229(c)(1)] is to protect limited partners from an extension of the Commissioner's time for assessing additional taxes against them where the partner who signed the return did not know that it contained false items.")). Because the Government, in this case, does not contend that any BASR partner intended to evade federal taxes, *ipso facto*, the statute governing the period during which the IRS may issue a FPAA is I.R.C. § 6229(c)(1). Pl. Mot. at 12; *see also* Pl. Mot. Ex. T ¶ 71 ("[T]he United States does not assert that the *Pettinatis* (William Sr., Virginia, William Jr., and Andrew) themselves possessed an 'intent to evade tax' within the meaning of § 6501(c)(1)[.]"); Gov't PFOF at 27 (same).

Although the Government contends that I.R.C. § 6501(c)(1) governs the time period during which the IRS may assess federal taxes on a partnership return, BASR argues that interpretation is wrong, because I.R.C. § 6501(c)(1) provides that the period in which the IRS may issue a FPAA can be extended only where there is "a false or fraudulent return with the intent to evade tax." Pl. Mot. at 14; Pl. Reply at 2-3 (citing I.R.C. § 6501(n)(2) ("For extension of the period in the case of partnership items . . . see section 6229.")); 7/29/13 TR at 7-8 (BASR's Counsel: "Congress' clear intent [was] that at least one partner in the partnership must intend to evade tax in order for the statute of limitations to be extended with respect to a fraudulent partnership item."). As the United States Court of Appeals for the Federal Circuit held in *Prati v. United States*, 603 F.3d 1301 (Fed. Cir. 2010): "Sections 6501 and 6229 do not operate independently to allow a taxpayer to assert one in isolation and thereby render an otherwise timely assessment untimely." *Id.* at 1307. Therefore, the Government cannot rely on "[s]ection 6501(c)(1) without regard to the more detailed rules for fraudulent partnership items in [s]ection 6229(c)(1)." Pl. Reply at 3-4. For this reason, BASR adds that "no court has *ever* applied [s]ection 6501(c)(1) instead of [s]ection 6229(c)(1) to determine whether the statute of limitations is extended in a case involving an allegedly fraudulent tax return." Pl. Reply at 5 (citing, *inter alia*, *Transpac Drilling*, 83 F.3d at 1412-15 (applying I.R.C. § 6229(c)(1) to a partnership, "even though it was organized and operated for improper or illicit purposes.")). Moreover, it would be erroneous for the court to apply I.R.C. § 6501(c)(1) to partnership returns, because it would render section 6229(c)(1) superfluous and violate the rule of statutory interpretation that "'all parts of a statute, if at all possible, are to be given effect.'" Pl. Reply at 6 (quoting *Weinberger v. Hynson, Westcott & Dunning, Inc.*, 412 U.S. 609, 633 (1973)); *see also* 7/29/13 TR at 13 (BASR Counsel re: same). In addition, ruling that I.R.C. § 6501(c)(1) governs the period in which the IRS may issue a FPAA would violate the rule that "the specific governs the general" because I.R.C. § 6229(c)(1) applies only to partnership returns, whereas I.R.C. § 6501(c)(1) applies to fraudulent returns in general. Pl. Reply at 6 n.2 (quoting *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2070-71 (2012)). For this reason, the United States Tax Court has rejected the application of the general rule of I.R.C. § 6501 to avoid the specific requirements of I.R.C. § 6229. Pl. Reply at 4-5 (citing *Ginsburg v. Comm'r*, 127 T.C. 75 (2006) (holding that I.R.C. §§ 6229(a) and 6229(b)(3) prohibit the IRS from extending the time period on a FPAA regarding partnership items based on an agreement with the taxpayer under I.R.C. § 6501(c)(4), unless the partnership agreement explicitly states that it applies to partnership items)); 7/29/13 TR at 11 (BASR Counsel re: same).

The Government responds that I.R.C. § 6229(c)(1) "may extend but not shorten, the applicable limitations period for assessing tax under § 6501." Gov't Resp. at 26 (citing I.R.C. § 6501(n)(2) ("For extension of period in the case of partnership items . . ., see section 6229.")); *see also AD Global Fund, LLC v. United States*, 481 F.3d 1351, 1354 (Fed. Cir. 2007) ("Section 6501 simply cross-references § 6229(a) as an 'extension' of period for partnership items."). Therefore, the starting point for determining the time period during which the IRS may assess taxes on a partnership return is I.R.C. § 6501. Gov't Resp. at 26 (citing *Bufferd v. Comm'r*, 506 U.S. 523, 527 (1993) (holding that I.R.C. § 6501's three-year statute of limitations commences with the filing of a taxpayer's return, instead of the filing date of the pass-through entity)). Therefore, I.R.C. § 6229(c)(1) does not displace I.R.C. § 6501(c)(1). Gov't Resp. at 27 (citing *AD Global Fund*, 481 F.3d at 1354 ("§ 6229(a) does not create an independent statute of limitations [for taxes attributable to partnership items]."); *Prati*, 603 F.3d

at 1307 ("Sections 6501 and 6229 do not operate independently to allow a taxpayer to assert one in isolation and thereby render an otherwise timely assessment untimely.")).  In other words, I.R.C. § 6501 is applicable to all income tax returns, including where the "'*tax* [is] *imposed for partnership items*. . . . *No exception is provided for assessment of taxes for partnership items.*'" Gov't Resp. at 27-28 (quoting *AD Global*, 481 F.3d at 1354 (emphasis added by Gov't)). Therefore, the Government's view is that *AD Global* and *Prati* foreclose BASR's argument that I.R.C. § 6229(c)(1) displaces I.R.C. § 6501(c)(1) with respect to partnership items.  7/29/13 TR at 30-31 (Government Counsel: "[a]s the Federal Circuit in *AD Global* explained, [I.R.C. § 6229] does not create an independent statute of limitations but sets a maximum time period for assessments to be made.").  Furthermore, this interpretation does not render I.R.C. § 6229 superfluous, because of the "myriad of potential situations involving a fraudulent partnership return in which the false partnership item is not allocable to the partners or is not reported on their individual returns."  Gov't Resp. at 28.

The Government selects this case to test the proposition that the fraudulent intent required to extend the statute of limitations under I.R.C. § 6501(c)(1) is not limited to the taxpayer.  Gov't Resp. at 16-23.  This view finds support in *City Wide Transit, Inc. v. Comm'r*, 709 F.3d 102 (2d Cir. 2013), where a federal appellate court held that a tax preparer's fraudulent intent triggered the statute of limitations extension in I.R.C. § 6501(c)(1), even where the preparer's primary motive was his own benefit rather than the taxpayer's.  *Id*. at 108 ("It is of no consequence that [the preparer] evaded City Wide's taxes for his own benefit[.]"); *see also* Gov't Supp. Memo at 1.[9]  In this case, although Erwin Mayer was not the tax preparer, "[h]e was essentially the puppet master of . . . John Malone, who actually signed this return."  7/29/13 TR at 36 (Government Counsel).

The Government then reasons that, if Congress intended to limit the scope of I.R.C. § 6501(c) only to situations where the taxpayer had fraudulent intent, Congress would have written that requirement into the statute.  Gov't Resp. at 17 (citing *Allen v. Commissioner*, 128 T.C. 37, 40 (2007) ("Nothing in the plain meaning of the statute suggests the limitations period is extended only in the case of the taxpayer's fraud.  The statute keys the extension to the fraudulent nature of the return, not to the identity of the perpetrator of the fraud.")).  As the *Allen* court observed:

The version of the Revenue Act of 1934 that passed the House Ways and Means Committee would have amended this section to read: "If the taxpayer . . . files a

_____

[9] BASR counters that the *City Wide Transit* case determined only that the Commissioner successfully established in that case by clear and convincing evidence that the tax preparer intended to evade tax.  Pl. Supp. Memo at 2; *see also City Wide Transit*, 709 F.3d at 107 (describing the "very narrow question" at issue before the federal appellate court).  In fact, City Wide's counsel conceded at oral argument that the tax preparer's fraud would trigger the statute of limitations extension in I.R.C. § 6501(c)(1), even if City Wide "did not know of the preparer's defalcations; [and] (2) . . . did not sign or knowingly allow to be filed a false return," so the court did not confront that question.  *See City Wide*, 709 F.3d at 107 n.3.  For that reason, the appellate court issued an opinion "without deciding whether certain factual situations might arise that sever the tax*payer's* liability from the tax-*preparer's* wrongdoing."  *Id.*

false or fraudulent return with intent to evade tax ... the tax may be assessed . . . at any time." H.R. 7835, 73d Cong., 2d Sess. Sec. 276(a) (1934) (as passed by House, Feb. 21, 1934). The Senate Committee on Finance discarded this language, however, with no discussion. The enacted version continued to focus on the return with no express requirement that the fraud be the taxpayer's and remains the language in sec. 6501(c)(1) today.

*Id*. at 39 n.3.

The Government also contends that the *Allen* court's interpretation is supported by the United States Supreme Court's observation that "limitations statutes barring the collection of taxes otherwise due and unpaid are strictly construed in favor of the Government." *Badaracco v. Comm'r*, 464 U.S. 386, 391 (1984); *see also Bufferd*, 506 U.S. at 527 n.6 (noting that courts should accept the Government's reasonable construction of a limitations statute "absent convincing grounds for rejecting it"). Moreover, a purposive interpretation of I.R.C. § 6501(c)(1) supports the *Allen* court's approach. Gov't Resp. at 19-21; 7/29/13 TR at 35 (Government Counsel: "[T]he statute is designed to protect the IRS's ability to assess tax when there is a fraudulent return.").

As a result, the Government insists that the fraudulent intent of an agent of the taxpayer should trigger the statute of limitations extension in I.R.C. § 6501(c)(1), because the taxpayer is responsible for filing a return and paying any tax due. Gov't Resp. at 21 (citing *Allen*, 128 T.C. at 41 (stating that the taxpayer's duty "cannot generally be avoided by relying on an agent")); *see also Am. Properties, Inc. v. Comm'r*, 28 T.C. 1100, 1117 (1957) ("[T]axpayers must bear the responsibility for the failures of their agents."). In this case, William Pettinati, Sr. testified that he did not verify the accuracy of the facts in the opinion letters. Gov't Resp. App. C (9/26/2012 Dep. of William Pettinati, Sr.) at 130-31 ("Q: Did you—did you attempt to verify at that time whether these facts were accurate? . . . A: My answer is—did I personally? No, I did not."). Therefore, the Government argues that the Pettinatis "shirked their responsibility to make a good faith effort to correctly report their true tax liability." Gov't Resp. at 22. Consequently, the Pettinatis should not benefit from their willful ignorance. Gov't Resp. at 22.

In addition, the Government urges the court to adopt the reasoning in *Allen*, because the nation's tax system relies on self-reporting of taxes owed and, as the Supreme Court has recognized, "fraud cases ordinarily are more difficult to investigate than cases marked for routine tax audits." *Badaracco*, 464 U.S. at 398; *see also Lucia v. United States*, 474 F.2d 565, 570-71 (5th Cir. 1973) (observing that in "specific instances where the self-assessment system is thwarted, . . . Congress has provided that time will not bar assessment or collection proceedings until [an accurate] return is filed."). Therefore, whether the falsity or fraudulence of a return is due to the taxpayer's intent or another involved in the return's preparation, the IRS "labors under the same disadvantage in ascertaining and assessing the correct tax liability and has the same need for an extended limitations period." Gov't Resp. at 20.

In this case, the use of limited liability companies to engage in the short sales enabled the Pettinatis not to disclose "on their individual returns that they had received and contributed short sale proceeds to a partnership, which might have led to an IRS audit." Gov't Resp. at 20.

Similarly, the transaction was structured so that the Pettinatis' returns did not reveal that their reported gains were lower as the result of a step-up in basis. Gov't Resp. at 21. I.R.C. § 6501(c)(1) was intended to eliminate the statute of limitations for the assessment of tax in exactly this kind of situation. Gov't Resp. at 19. For this reason, the United States Court of Appeals for the Federal Circuit has held that the statute of limitations extensions authorized under I.R.C. § 6229(c)(1) are operative, even where the signer of the partnership return intends to evade his partners' taxes, not his own. *See Transpac*, 83 F.3d at 1414 (explaining that "the statute itself . . . refers only to the 'intent to evade taxes'"). Since I.R.C. § 6501(c)(1), like I.R.C. § 6229(c)(1), "refers only to the 'intent to evade taxes,'" it should be interpreted in the same way. Gov't Resp. at 23. As such, the Pettinatis' individual tax returns are "false or fraudulent," within the meaning of I.R.C. § 6501(c)(1), because they included a false item known to be untrue and based on an intent to cheat or deceive the Government. Gov't Resp. at 38.

### 2.    The Court's Resolution

The United States Court of Appeals for the Federal Circuit has held that I.R.C. § 6501 and I.R.C. 6229(a) should be read together, so that the three-year base-line statute of limitations is I.R.C. § 6501, but I.R.C. § 6229(a) provides a "minimum period for assessments of partnership items" that may be extended. *See AD Global Fund*, 481 F.3d at 1354 (citing *Andatech L.L.C. v. Comm'r*, 331 F.2d 972, 976-77 (D.C. Cir. 2003) ("The plain language of § 6501 compels its applications to *all* assessments.") (emphasis added)). In short, I.R.C. § 6229(a) establishes "a minimum period during which the period for tax assessments for partnerships may not end," although "[t]his minimum period may expire before or after the maximum period provided in § 6501." *Id.* at 1354. In *Prati*, our appellate court emphasized once again: "Sections 6501 and 6229 operate in tandem to provide a *single limitations period*. When an assessment of tax involves a partnership item or an affected item, section 6229 can extend the time period that the IRS otherwise has available under section 6501 to make that assessment." *Prati*, 603 F.3d at 1307 (emphasis added); *see also Irvine v. United States*, 2013 WL 4766541 (C.A. Tex. at *4) (stating that the "reasoning" in *Prati* was "logical and persuasive").

Reading I.R.C. § 6501 and I.R.C. § 6229(c)(1) together, the court looks first to I.R.C. § 6501, which requires the IRS to assess any federal tax due within three years after a return is filed, unless the return was "false or fraudulent with the intent to evade tax." I.R.C. § 6501(c)(1). In this case, the tax returns at issue were filed and received by the IRS in 2000. Therefore, for the IRS to be able to assess federal taxes after 2003, the return must be "false or fraudulent . . . with the intent to evade tax[.]" I.R.C. § 6501(c)(1).[10]

I.R.C. § 6501(a) defines "return" as "the return to be filed by the *taxpayer* (and does not include a return of any person from whom the taxpayer received an item of income gain, loss, deduction, or credit)." 26 U.S.C. § 6501(a) (emphasis added). Because the language of 6501(a) is expressly limited to a return filed by the "taxpayer," the fraudulent intent referenced in I.R.C. § 6501(c) is by implication limited to fraud by the taxpayer. As such, the IRS is bound by the standard three-year limitations period in I.R.C. § 6501(a), unless the taxpayer possesses fraudulent intent, or unless I.R.C. § 6229 applies. I.R.C. § 6229(a) likewise contains a three-year

_____

[10] The FPAA, however, was filed on January 20, 2010.

limitations provision for partnership returns, but also includes a "special rule in case of fraud." I.R.C. § 6229(c). The text of this rule uses the term "false return," which is defined as one where "any partner has, with the intent to evade tax, signed or participated directly or indirectly in the preparation of a partnership return which includes a false or fraudulent item." I.R.C. § 6229(c).

In this case, there is no question that BASR's partnership return included false or fraudulent items. But, the Government does not contend that "the Pettinatis (William Sr., Virginia, William Jr., and Andrew) themselves possessed an 'intent to evade tax' within the meaning of 6501(c)(1)[.]" Pl. Ex. T (10/15/12 Gov't Resp. to Pl. 1st Set of Requests for Admission ¶ 71 at 24); *see also* Answer ¶ 16(a)(b) (stating that BASR's return was "false or fraudulent," because of the "shelter transactions in this case fraudulently structured by attorneys of the defunct law firm of Jenkins & Gilchrist with the intent to evade tax."); *see also id.* ¶ 16(c) ("Based on fraudulent tax opinions issued by Erwin Mayer, an attorney in Jenkins & Gilchrist's Chicago office, and according to his further instructions[.]"). Moreover, the legislative history of I.R.C. 6501(c)(1) supports the view that it is the taxpayer who must have "the intent to evade tax," because the text of I.R.C. § 6501(c)(1) is the same as the "false or fraudulent with intent to evade the tax" language found in the Revenue Act of 1918, § 250(b), (d), 40 Stat. 1057, 1083 (1919). Pl. Reply at 10 (stating that the taxpayer is not liable for a penalty, "if the return is made in good faith and the understatement of the amount in the return is not due to any fault of the taxpayer" (quoting section 250(b), 40 Stat. at 1083)). In addition, "false or fraudulent with intent to evade the tax" had the same meaning in Revenue Act section 250(d), the predecessor to I.R.C. § 6501(c).

Therefore, the court has determined that the meaning of "intent to evade tax," as that text is used in I.R.C. § 6501(c), is limited to instances in which the taxpayer has the requisite intent to commit fraud.[11] Because the Government conceded that the taxpayers in this case did not have that intent, I.R.C. § 6501(c) governs the time period in which the IRS may assess federal tax by a FPAA in this instance; that assessment must have taken place within three years, *i.e.*, by 2003. Notwithstanding concerns articulated by the Government, the references in I.R.C. § 6501 to fraudulent intent are solely those of the "taxpayer," and as such, the court must interpret the plain and unambiguous meaning of the statute. *See Hartford Underwriters Inc. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) ("[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.").

The United States Court of Appeals for the Second Circuit, however, has taken a different approach to interpreting I.R.C. § 6501 by conducting a factual inquiry into whether a tax attorney's fraud is "secondary or remote to the fraudulent returns." *See City Wide Transit*, 709 F.3d at 108. In *City Wide Transit*, a tax preparer's fraud, as reflected in a corporate taxpayer's return, was deemed to require application of I.R.C. § 6501(c)(1)'s statute of limitations. *Id.* at 107-08. That federal appellate court, however, opined that it would have ruled differently if the understatement of income on the company's tax return stemmed from a fraud perpetrated against the company and was unrelated to the preparing of the return. *Id.* at 108 ("If that had been the

---

[11] *See Gillespie v. United States*, 231 Ct. Cl. 851, 852 (1982) (*per curiam*) ("The term 'fraud,' as used in [another partnership tax case], means intentional wrongdoing on the part of a taxpayer, motivated by a specific purpose to evade a tax known or believed to be owing.")).

case, [the preparer's] fraud on the company would have *caused* the company to file a false return, and we would not assume that the company intended to evade a tax by filing that false return."). I.R.C. § 6501(c)(1)'s extension of the statute of limitations, however, applied, because the wrongdoer "was not a third party unrelated to the preparation and filing of the returns." *Id.* (citing IRS Chief Counsel Advisory 201238026, 2012 WL 4261126 (June 2012) (advising that I.R.C. § 6501(c)(1)'s statute of limitations would not apply to the personal tax liability of a "shareholder who did not take part in the fraud reflected on the S-Corporation's Form 1120S tax return")). The Second Circuit's approach is analogous to how other federal appellate courts have dealt with the innocent spouse problem. *See Estate of Upshaw v. Comm'r*, 416 F.2d 737, 742-43 (7th Cir. 1969) (holding the innocent wife liable for deficiencies on a joint return that her husband filed fraudulently and with the intent to evade tax); *Vannaman v. Comm'r*, 54 T.C. 1011, 1018 (1970) ("[E]ven if the joint-filing husband is the only one who committed fraud in filing the return and making any underpayment . . . the bar of the statute of limitations is still removed from the deficiencies determined against the wife."); *but see Jackson v. Comm'r*, 23 T.C.M. (CCH) 2022 (1964) (holding that the husband's fraud with intent to evade tax on his individual and business returns did not toll the statute of limitations with respect to deficiencies on his wife's individual return, even though she was a 45% owner of the business), *aff'd*, 380 F.2d 661 (6th Cir. 1967).

These cases, however, are not binding upon this court.[12] Therefore, unless and until the United States of Appeals for the Federal Circuit holds that the court should undertake the factual inquiry suggested in *City Wide Transit* to ascertain whether the tax attorneys' fraud was "secondary or remote,"[13] the court must interpret I.R.C. § 6501(c)(1) and I.R.C. § 6229(c)(1), as written, where the plain meaning of the text "intent to evade tax" in I.R.C. § 6501(c)(1) is no different from how that text appears in I.R.C. § 6229(c)(1).  *See Morrison-Knudsen Constr. Co. v. Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor*, 461 U.S. 624, 633 (1983) ("[A] word is presumed to have the same meaning in all subsections of the same statute.").

That is not to say that the Government did not advance a number of persuasive policy arguments why I.R.C. § 6501(c)(1) needs to be amended, particularly in light of the practical impediments to the discovery of tax fraud. *See Badaracco*, 464 U.S. at 398. The integrity of our constitutional system, however, rests on each branch of the federal government performing the function specified therein. The function of the court is to interpret, not re-write, the law. *See United States v. Byrum*, 408 U.S. 125 (1972) ("When a principle of taxation requires

---

[12] Likewise, the court observes that the Government's reliance on *Allen* is misplaced, because the Tax Court relied on a failed legislative proposal as evidence that Congress considered and rejected requiring the taxpayer to have the requisite intent to evade paying federal taxes. *Compare* Gov't Resp. at 18 *with Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 187 (1994) ("Failed legislative proposals are a particularly dangerous ground on which to rest an interpretation of a . . . statute.").

[13] Even if the court were persuaded to adopt the reasoning employed by *City Wide Transit*, the facts in this case are different. Here, unlike the tax preparer in *City Wide Transit*, Mr. Mayer neither signed nor prepared the returns at issue. Pl. Ex. H at APP-100 (9/25/12 Malone Dep.).

reexamination, Congress is better equipped than a court to define precisely the type of conduct which results in tax consequences. When courts readily undertake such tasks, taxpayers may not rely with assurance on what appear to be established rules[.]"); *see also id.* at 135.

For the reasons discussed herein, Plaintiff's November 16, 2012 Motion For Summary Judgment is granted, under 26 U.S.C. § 6501(c)(1), instead of 26 U.S.C. § 6229(c)(1).  Pursuant to Rule 58, the Clerk of Court is directed to enter judgment in favor of Plaintiff as follows: The adjustments and accuracy-related penalties set forth in the Notice of Final Partnership Administrative Adjustment ("FPAA"), dated January 20, 2010, issued to BASR Partnership are not sustained on the basis that the FPAA was untimely issued. It is therefore determined that there are no adjustments to partnership items or accuracy-related penalties for BASR Partnership's tax periods ended June 12, 1999, and December 22, 1999.

**IT IS SO ORDERED.**

<u>s/ Susan G. Braden</u>
**SUSAN G. BRADEN**
**Judge**