# In the United States Court of Federal Claims

No. 10-244

Filed: January 31, 2017

*******************************************

|  |  |
|---|---|
| * | 26 U.S.C. §§ 6223 (Notice To Partners Of Proceedings), 6226 (Tax Equity And Fiscal Responsibility Act Of 1982), 7430 (Awarding Of Costs And Certain Fees), 7522 (Content Of Tax Due); |
| * |  |
| * |  |
| BASR PARTNERSHIP, by and through WILLIAM F. PETTINATI, SR., Tax Matters Partner, | 28 U.S.C. § 2412 (Equal Access To Justice Act); |
| Plaintiff, | Treas. Reg. §§ 301.7430–1 (Exhaustion Of Administrative Remedies), 301.7430–4 (Reasonable Administrative Costs), 301.7430–5 (Prevailing Party); |
| v. |  |
| THE UNITED STATES, | TEX. BUS. ORG. CODE ANN. §§ 11.051, 11.055, 152.002, 152.703, 152.704, 152.705, 152.708; |
| Defendant. | TEX. PROP. CODE ANN. § 113.019. |

*******************************************

**Thomas A. Cullinan**, Sutherland Asbill & Brennan LLP, Atlanta, Georgia, Counsel for Plaintiff.

**Jacob Earl Christensen**, United States Department of Justice, Tax Division, Washington, D.C., Counsel for the Government.

## MEMORANDUM OPINION AND FINAL ORDER GRANTING, IN PART, AND DENYING, IN PART, PLAINTIFF'S MARCH 7, 2016 MOTION FOR LITIGATION COSTS

**BRADEN**, *Judge*.

On March 7, 2016, BASR Partnership filed a Motion For Litigation Costs, pursuant to Section 7430 of the Internal Revenue Code. To facilitate review of this Memorandum Opinion And Final Order, the court has provided the following outline:

I.  **RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY.**

II.  **DISCUSSION.**

    A.  **Plaintiff's Argument.**

        1.  **BASR Is A "Prevailing Party."**

        2.  **BASR Meets The Requirements of I.R.C § 7430(b).**

        3.  **Special Factors Require An Increase In BASR's Attorney Fees Above The Statutory Maximum.**

        4.  **BASR's Paralegal Fees And Other Costs Are "Reasonable."**

    B.  **The Government's Response.**

        1.  **BASR Did Not Pay Or Incur Any Litigation Costs.**

        2.  **BASR Was Not A "Real-Party-In-Interest."**

        3.  **The "Real-Parties-In-Interest" Have A Net Worth Above The Statutory Maximum.**

        4.  **BASR Is Not A "Prevailing Party," Because It Did Not Make A "Qualified Offer."**

            a.  **The "Qualified Offer" Provision Does Not Apply, Because Tax Liability Was Not "In Issue."**

            b.  **The "Qualified Offer" Provision Does Not Apply, Because There Was No "Qualified Offer Period."**

            c.  **The Offer Was A "Sham."**

        5.  **The Court Should Exercise Its Discretion To Deny Awarding Litigation Costs.**

        6.  **BASR's Requested Litigation Costs Are Not "Reasonable."**

            a.  **BASR May Not Recover Attorney Fees Above The Statutory Maximum.**

            b.  **BASR May Not Recover Litigation Costs Incurred In Connection With Proceedings Before The Internal Revenue Service And The United States Tax Court.**

            c.  **BASR May Not Recover Paralegal Fees For "Merely Clerical Tasks."**

            d.  **BASR May Not Recover Litigation Costs Incurred In Connection With An Unsuccessful Discovery Motion.**

    C.  **Plaintiff's Reply.**

        1.  **BASR "Incurred" Litigation Costs, Required By Texas Partnership Law.**

        2.  **BASR Is A "Prevailing Party."**

            a.  **BASR Was A "Party" To The TEFRA Proceeding.**

            b.  **Even if BASR Was Not A "Party," BASR's Partners Meet The Net-Worth Requirement.**

            c.  **BASR Made A Proper "Qualified Offer."**

3.      BASR's Requested Litigation Costs Are "Reasonable."

4.      BASR Is Entitled To An Award Of Additional Attorney Fees Incurred In Connection With The March 7, 2016 Motion For Litigation Costs And Post-Trial Litigation.

D.    The Government's Sur-Reply.

E.    Plaintiff's Supplemental Filing.

F.    The Government's Supplemental Response.

G.    The Court's Resolution.

     1.      BASR Is A "Prevailing Party" Under I.R.C § 7430.

         a.    BASR Is A "Party" Under I.R.C § 7430(c)(4).

         b.    BASR Made A "Qualified Offer" And Is Therefore A "Prevailing Party" Under I.R.C § 7430(c)(4)(E).

            i.    Tax Liability Was "In Issue" In This Case.

            ii.   A "Qualified Offer" Was Made During The "Qualified Offer Period."

            iii. The "Qualified Offer" Was Not A Sham.

     2.      BASR "Incurred" The Fees Paid To Sutherland Asbill & Brennan LLP.

     3.      BASR's Litigation Costs Are "Reasonable."

         a.    BASR's Attorneys Spent A "Reasonable" Number Of Hours On This Case.

         b.    BASR May Recover "Reasonable" Supplemental Fees.

         c.    The Requested Increase In The Statutory Rate Set Forth In I.R.C. § 7430(c)(1)(B)(iii) Is "Reasonable."

         d.    The Paralegal Fees Are "Reasonable."

         e.    Other Litigation Costs Are "Reasonable."

     4.      BASR Meets The Requirements of I.R.C § 7430(b).

     5.      The Court's Award Of Litigation Costs.

III.    CONCLUSION.

## I.     RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY.[1]

On January 20, 2010, the Internal Revenue Service ("IRS") issued a Notice Of Final Partnership Administrative Adjustment ("FPAA") to William F. Pettinati, Sr., the Tax Matters Partner of the BASR Partnership, regarding the BASR Partnership's federal income tax returns for tax years ended June 12, 1999 and December 22, 1999. Compl. Ex. A; Compl. ¶ 4. On April 16, 2010, the BASR Partnership, by and through its Tax Matters Partner, Mr. Pettinati, Sr., filed a Complaint in the United States Court of Federal Claims, pursuant to the judicial review procedures established by the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"). *See* 26 U.S.C. § 6226(a)(3)[2] ("Within 90 days after [notice of a FPAA], the tax matters partner may file a petition for a readjustment of the partnership items for such taxable year . . . with the [United States] Court of Federal Claims.").

On October 29, 2013, the court issued a Memorandum Opinion And Final Order, determining that the IRS did not timely issue the FPAA and was time-barred by I.R.C. Section 6501(c). *See BASR Partnership by & through Pettinati v. United States*, 113 Fed. Cl. 181,194 (2013). On December 26, 2013, the Government appealed. ECF No. 55.

On July 29, 2015, the United States Court of Appeals for the Federal Circuit affirmed the court's Memorandum Opinion And Final Order. *See BASR Partnership v. United States*, 795 F.3d 1338, 1350 (Fed. Cir. 2015). On September 28, 2015, the Government filed a Petition For *En Banc* Rehearing. On November 12, 2015, the appellate court denied the Petition. On December 2, 2015, the Clerk of the Court issued the mandate of the United States Court of Appeals for the Federal Circuit. ECF No. 60.

On March 7, 2016, BASR Partnership ("Plaintiff" or "BASR") filed a Motion For Litigation Costs,[3] with the United States Court of Federal Claims, pursuant to I.R.C § 7430

---

[1] The relevant facts discussed herein are derived from the April 16, 2010 Complaint ("Compl.") and exhibits ("Compl. Exs A–D"); exhibits attached to Plaintiff's March 7, 2016 Memorandum in Support of Litigation Costs ("Pl. Mem. Exs. A–D"); the Appendix attached to the Government's April 28, 2016 Opposition (Gov't App. 1–295); the exhibits attached to Plaintiff's May 9, 2016 Reply ("Pl. Reply Exs. A–E"); the exhibits attached to Plaintiff's December 1, 2016 Supplemental Brief ("Pl. Supp. Exs. A–F"); and the court's prior Memorandum Opinion and Final Order, *BASR Partnership by & through Pettinati v. United States*, 113 Fed. Cl. 181, 181–194 (2013).

[2] The Internal Revenue Code, contained in Title 26 of the United States Code, is referred to throughout this Memorandum Opinion And Final Order as the "I.R.C."

[3] I.R.C § 7430(c)(1) defines "reasonable litigation costs" as including:

(A) reasonable court costs, and
(B) based upon prevailing market rates for the kind or quality of services furnished-
  (i) the reasonable expenses of expert witnesses in connection with a court
   proceeding, except that no expert witness shall be compensated at a rate in

together with a Memorandum In Support ("Pl. Mem.") and exhibits ("Pl. Mem. Exs. A–D").[4] ECF No. 61. Therein, BASR requests an award for the following attorney and paralegal fees and costs: (1) $147,326 in attorney fees reflecting the time billed by Sutherland Asbill & Brennan LLP ("Sutherland Asbill") at the statutory hourly rate;[5] (2) $118,014 in addition to the statutory rate, because of the complexity of this case; and (3) $34,940.69 in paralegal fees and other costs. Pl. Mem. at 7–10.

On March 16, 2016, the Government filed a Motion For Leave To Conduct Limited Discovery Related To Plaintiff's Motion For Litigation Costs, For An Extension Of Time Within Which The Government May File a Response To Plaintiff's Motion, And For An Order Limiting The Time Within Which Plaintiff Must Respond To Discovery. ECF No. 62. On the same day, BASR filed a Response. ECF No. 63. On March 17, 2016, the court convened a telephone status conference to discuss the Government's motion. ECF No. 66, 3/17/16 TR at 1–12. Thereafter, the court entered an Order requiring BASR to "produce the client's fee agreement, a copy of all legal bills sent to the client, and any proof of payment from the client." ECF No. 64.

---

> excess of the highest rate of compensation for expert witnesses paid by the United States,
> (ii) the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and
> (iii) *reasonable fees paid or incurred for the services of attorneys in connection with the court proceeding*[.]

I.R.C. § 7430(c)(1) (emphasis added).

[4] These exhibits included:

(1) Pl. Mem. Ex. A–July 12, 2012 letter to the United States Department of Justice sent by BASR's counsel, marked "Qualified Offer Pursuant To 26 U.S.C § 7430 And Chief Counsel Notice (35)4(16)(12)-0A On Behalf Of Mr. William F. Pettinati, Sr., BASR Partnership, And All Other Partners (Direct And Indirect) Of BASR Partnership."
(2) Pl. Mem. Ex. B–(i) the Affidavit Of William Pettinati, Sr.; (ii) the Affidavit of William Pettinati, Jr.; (iii) the Affidavit of Virginia Pettinati; and (iv) the Affidavit of Andrew Pettinati.
(3) Pl. Mem. Ex. C–BASR's Bill Of Costs, and a table showing paralegal and litigation support assistant hours and other costs billed.
(4) Pl. Mem. Ex. D–a table showing attorney hours billed.

[5] The statutory hourly rate for attorney fees is set by I.R.C § 7430(c)(1)(B), and is indexed by IRS regulations for annual cost-of-living adjustments. For 2012, 2013, 2014, 2015, and 2016, the statutory rate was $180, $190, $190, $200, and $200 respectively. *See* I.R.C. § 7430(c)(1); *see also* Rev. Proc. 2011-52, 2011-45 I.R.B. 701; Rev. Proc. 2012-41, 2012-45 I.R.B. 539; Rev. Proc. 2013-35, 2013-47 I.R.B. 537; Rev. Proc. 2014-61, 2014-47 I.R.B. 860; Rev. Proc. 2015-53, 2015-44 IRB 615.

On April 28, 2016, the Government filed an Opposition To Plaintiff's Motion For Litigation Costs ("Gov't Opp.") with an attached Appendix ("Gov't App. 1–295"), and requested Oral Argument.  ECF No. 68.

On May 9, 2016, BASR filed a Reply To The Government's Opposition To Plaintiff's Motion For Litigation Costs ("Pl. Reply"), and exhibits ("Pl. Reply Exs. A–E") and requested that the court deny the Government's request for Oral Argument.  ECF No. 70.  Therein, BASR also requested "fees for fees," *i.e.*, payment for the reasonable time and costs spent to recover claimed litigation costs.  Pl. Reply at 22.  Specifically, BASR requested fees for 24.9 partner hours and 59.6 associate hours, or an additional $24,860 in attorney fees, bringing the total request for litigation costs to $325,140.69.  Pl. Reply at 23.  On May 23, 2016, the Government filed a Motion For Leave To File Sur-Reply and attached a Sur-Reply thereto ("Gov't Sur-Reply").  ECF No. 71.  On May 24, 2016, the court granted the Government's May 23, 2016 Motion.

On October 26, 2016, the court convened an oral argument in Atlanta, Georgia, the venue requested by BASR's counsel.  ECF No. 73, 10/26/16 TR at 1–74.

On December 1, 2016, BASR submitted a Supplemental Filing ("Pl. Supp. Mem."), requesting an additional $11,879 in litigation costs incurred after the filing of the May 9, 2016 Reply, together with the Declaration of Timothy R. Lavender ("11/9/16 Lavender Decl."), in support of the reasonableness of attorney fees requested, and additional affidavits reflecting the net worth of The Pettinati 1998 Gift Trust For Benefit Of ("f/b/o") William F. Pettinati, Jr. and The Pettinati 1998 Gift Trust f/b/o Andrew Pettinati, and invoices sent to William F. Pettinati, Jr. by Sutherland Asbill for an additional $45,500 in attorney fees accrued since May 9, 2016.  ECF No. 74.  In sum, BASR requests a total of $337,019.69 in litigation costs.  Pl. Supp. Mem. at 2.

On December 7, 2016, the Government filed a Response ("Gov't Supp. Resp.").  ECF No. 75.

## II.     DISCUSSION.

### A.     Plaintiff's Argument.

BASR argues that, as a "prevailing party" under I.R.C § 7430, it is entitled to litigation costs.  Pl. Mem. at 2.

### 1.     BASR Is A "Prevailing Party."

To be a "prevailing party," a taxpayer must show that: (1) it substantially prevailed with respect to the amount in controversy; (2) the Government's position was not substantially justified; and (3) statutory net-worth requirements are met.  Pl. Mem. at 2 (citing Treas. Reg. § 301.7430-5(a)).  The taxpayer, however, need not establish the first two requirements, if it made a "qualified

offer" to the Government prior to the entry of a final judgment and that judgment was equal to or less than the offer.  *See* I.R.C. § 7430(c)(4)(E)(i).[6]

On July 12, 2012, BASR made a "qualified offer" of $1 to the Government to settle the FPAA issued to BASR and the effect of those adjustments on BASR's partners' federal income tax liability.  Pl. Mem. Ex. A.  The Government did not accept BASR's offer.  Pl. Mem. at 3.  Since the United States Court of Appeals for the Federal Circuit affirmed the court's grant of summary judgment in the underlying case, the tax effect of the FPAA is $0, which is less than the amount of the "qualified offer" made by BASR.  Pl. Mem. at 4.  As such, BASR is a "prevailing party" within the meaning of I.R.C § 7430(c)(4)(A)(i).  Pl. Mem. at 4.

I.R.C § 7430(c)(4)(A)(ii) also requires that a "prevailing party" meet the net-worth eligibility requirement of the Equal Access To Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(2)(B).  For partnerships, this amount is "less than $7 million and . . . less than 500 employees."  Pl. Mem. at 4 (citing I.R.C. § 7430(c)(4)(A)(ii).[7]  BASR and its partners did not have "a net-worth of more than $7 million nor did they have more than 500 employees at the time this action was filed."  Pl. Ex. B (3/7/16 Affidavit of William F. Pettinati, Sr.).

## 2.    BASR Meets The Requirements of I.R.C § 7430(b).

BASR adds that it has met all the requirements of I.R.C § 7430(b), specifying that litigation costs will not be awarded, unless: (1) the "prevailing party" exhausted all administrative remedies; (2) the attorney fees and litigation costs are allocable to the United States; and (3) the "prevailing party" did not unreasonably protract the proceeding.  *See* I.R.C. § 7430(b).  Ordinarily a "prevailing party" must file an appeal to the IRS Appeals Office to exhaust all administrative remedies to be eligible to recover reasonable litigation costs.  Pl. Mem. at 6 (citing I.R.C. § 7430(b)(1); Treas. Reg. § 301.7430-1(b)).  In this case, however, the IRS promulgated a regulation stating that "Appeals Office consideration will not be available for [']Son of Boss['] transactions," and the IRS characterized the transaction at issue in this case as a "Son of Boss" transaction.

---

[6] I.R.C § 7430(c)(4)(E)(i) provides:

A party to a court proceeding . . . shall be treated as the prevailing party if the liability of the taxpayer pursuant to the judgment in the proceeding (determined without regard to interest) is equal to or less than the liability of the taxpayer which would have been so determined if the United States had accepted a qualified offer of the party[.]

I.R.C § 7430(c)(4)(E)(i).

[7] I.R.C § 7430(c)(4)(A)(ii) cross references the EAJA, 28 U.S.C. § 2412(d)(1)(B), as to the net-worth requirement for a "prevailing party."  Section 2412(d)(1)(B) of the EAJA states that a "party" must meet certain requirements, and Section 2412(d)(2)(B) defines a party as "any partnership . . . the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed[.]"  28 U.S.C. § 2412(d)(1)(B), (d)(2)(B).

Pl. Mem. at 6–7 (citing 2004-21 I.R.B. 965).  BASR adds that all costs incurred in the litigation were allocable to the Government because the action began with the IRS's issuance of the FPAA, and that BASR did not unreasonably protract the proceeding.  Pl. Mem. at 7.

### 3. Special Factors Require An Increase In BASR's Attorney Fees Above The Statutory Maximum.

With respect to BASR's requested increase in attorney fees, I.R.C § 7430(c) provides that "fees shall not be in excess of $125 per hour [indexed for cost of living adjustments] *unless* the court determines that a special factor, such as the limited availability of qualified attorneys for such proceeding, the difficulty of the issues presented in the case, or the local availability of tax expertise, justifies a higher rate."  I.R.C. § 7430(c)(1)(B)(iii) (emphasis added).  BASR avers this case was "difficult" and concerned a "novel issue," justifying a higher hourly rate.  Pl. Mem. at 8 (quoting *Estate of O'Neal v. United States*, 90 A.F.T.R.2d 2002-7214, at *6 (N.D. Ala. 2002) (determining that the plaintiff was entitled to recover attorney fees under Section 7430 at twice the statutorily determined rate due to complexity of the tax issues involved)).  In this case, BASR was unable to locate any local or national firm with tax expertise that would enter the representation at the statutory rate.  Pl. Mem. Ex. B (3/7/16 Affidavits of William F. Pettinati, Sr., and William F. Pettinati, Jr.).  For these reasons, BASR requests recovery of attorney fees at an hourly rate equivalent to $400 for time billed by Sutherland Asbill partners and $250 for time billed by its associates, or an additional $118,014.  Pl. Mem. at 7–9.

### 4. BASR's Paralegal Fees And Other Costs Are "Reasonable."

Paralegal fees are allowed under the EAJA, when the paralegal performs nonlegal work that a lawyer would have had to perform personally, but for the paralegal.  Pl. Mem. at 10 (citing *Jean v. Nelson*, 863 F.2d 759, 778 (11th Cir. 1988) (holding that paralegal fees may be recovered at a market rate, but only to the extent that a paralegal performs work that would normally be done by an attorney), *aff'd sub nom. Comm'r, I.N.S. v. Jean*, 496 U.S. 154 (1990) (affirming the judgment of the United States Court of Appeals for the Eleventh Circuit); *see also WHR Grp., Inc. v. United States*, 121 Fed. Cl. 673, 679 (2015) (determining that plaintiff could recover paralegal fees at the cost of $145 per hour).

With respect to other litigation costs, the United States Court of Federal Claims permits recovery under I.R.C § 7430 for "photocopying, courier, travel, transcript/deposition, court filing, fax, and Westlaw expenses."  Pl. Mem at 9 (citing *Larsen v. United States*, 39 Fed. Cl. 162, 170 (1997), *appeal dismissed per stipulation*, 152 F.3d 945 (Fed. Cir. 1998)).  For these reasons, BASR requests $24,585 in paralegal fees (at a rate of $150 hour) and $10,355.69 in other litigation costs.  Pl. Mem. at 9–10.

### B. The Government's Response.

### 1. BASR Did Not Pay Or Incur Any Litigation Costs.

The Government responds that BASR did not pay or incur any litigation costs.  Gov't Opp. at 5 (citing *Estate of Palumbo v. United States*, 675 F.3d 234, 239 (3d Cir. 2012) ("[A] party seeking fees under § 7430 must [pay or] incur the litigation expenses [*i.e.,* the attorney and

paralegal fees and court costs] attendant to that proceeding.”)).  Litigation costs are incurred when there is a legal obligation to pay them.  Gov't Opp. at 6 (citing *Estate of Palumbo*, 675 F.3d at 240).  In this case, however, the engagement letters were addressed and counter-signed by William Pettinati, Sr. and his wife, Virginia Pettinati, and by William Pettinati, Jr. and, his wife, Karie Pettinati.  Gov't App. 3–5, 6–8.  Sutherland Asbill billed the Pettinatis directly and was paid by Mr. Pettinati Sr.'s and Mr. Pettinati Jr.'s personal credit cards.  Gov't App 219–27, 263–83, 284–95.  Therefore, BASR did not pay nor incur any of the litigation costs.  Gov't Opp. at 7.  Instead, those litigation costs were incurred and paid by William Pettinati, Sr., Virginia Pettinati, and William Pettinati, Jr.

### 2.    BASR Was Not A "Real-Party-In-Interest."

The Government adds that the "real-party-in-interest" doctrine also bars an award of litigation costs in this case, since the individual Pettinati family members paid and incurred the litigation costs.  Gov't Opp. at 9–10.  The Court of Claims has applied the "real-party-in-interest" doctrine to deny an award under the EAJA.  *See Wall Industries, Inc. v. United States*, 15 Cl. Ct. 796, 799 (1988)).  In *Wall Industries, Inc.*, a taxpayer assigned all rights in the litigation to an accountant.  *Id.* at 799.  In that case, the Court of Claims determined that the taxpayer was ineligible for an award because it had not 'incurred' any legal expenses; rather the accountant had.  *Id.* at 802–03.  In addition, the United States Court of Appeals for the District of Columbia has held that the "real-party-in-interest" is the party "obligated to pay the fees under the pertinent fee arrangement."  Gov't Opp. at 10 (citing *Unification Church v. Immigration & Naturalization Service*, 762 F.2d 1077, 1082 (D.C. Cir. 1985)).  That federal appellate court held, "[i]f we were to award fees in this case on the basis that the individual appellants qualified under subsection (d)(2)(B)(i) [*i.e.*, the net-worth requirements], we would open the door for the wholesale subversion of Congress's intent to prevent large entities from receiving fees under subsection (d)." *Unification Church*, 762 F.2d at 1082.  The Government concludes that "[u]nder *Unification Church* and *Wall Industries*, the real parties in interest with respect to [P]laintiff's [M]otion [F]or [L]itigation [C]osts are William Pettinati Sr., Virginia Pettinati, and William Pettinati Jr., who paid and incurred the litigation costs[.]"  Gov't Opp. at 13.

### 3.    The "Real-Parties-In-Interest" Have A Net Worth Above The Statutory Maximum.

William Pettinati, Sr., Virginia Pettinati, and William Pettinati, Jr., however, do not meet the EAJA's net-worth requirements, as they each possess a net worth greater than $2,000,000.  Gov't Opp. at 6 (citing 28 U.S.C. § 2412(d)(2)(B) (providing the net worth requirement for individuals under the EAJA)).  BASR does not contest that William Pettinati, Sr. or Virginia Pettinati do not satisfy the net-worth requirements.  Pl. Mem. at 6 n.5.  In the absence of any evidence to the contrary, the court must assume that William Pettinati, Jr. also fails to meet the net-worth requirements.  Gov't Opp. at 9 (citing *Foothill Ranch Co. v. Comm'r*, 110 T.C. 94, 100 (1998) ("No evidence has been submitted relating to the net worth of [certain partners of the partnership] and, as a result, they have not met the net worth requirements.")).

9

To the extent that William Pettinati, Jr. paid some of the litigation costs,[8] not in his personal capacity, but as Trustee of the Pettinati 1998 Gift Trust f/b/o William Pettinati, Jr., the "[c]ourt should reject any attempt by [P]laintiff to re-write history in this fashion."  Gov't Opp. at 14. The Sutherland Asbill engagement letter was signed by Mr. Pettinati, Jr. in his personal capacity.  Gov't App. 5.[9]  In addition, credit card statements evidence that Mr. Pettinati, Jr., paid his portion of the litigation costs with a personal credit card, not with trust assets.  Gov't App. 284–95.  To the extent BASR argues that Mr. Pettinati, Jr. agreed to pay legal costs as trustee, instead of in his personal capacity, pursuant to an *oral agreement*, such an agreement is unenforceable under Texas law. Gov't Opp. at 15.  Texas law does not recognize an oral contract to pay for professional services where the contract is not to be performed within one year.  *See* TEX. BUS. & COM. CODE ANN. § 26.01.[10]  Since Sutherland Asbill provided legal services for the Pettinatis since April 2011, any oral agreement was unenforceable, because services could and did extend for more than one year. Gov't Opp. at 15.

### 4.   BASR Is Not A "Prevailing Party," Because It Did Not Make A "Qualified Offer."

#### a.   The "Qualified Offer" Provision Does Not Apply, Because Tax Liability Was Not "In Issue."

The Government contends that BASR is not a "prevailing party," because tax liability was not an issue in this case.  Gov't Opp. at 17.  I.R.C § 7430(c)(4)(E)(i) provides that a party will be considered a "prevailing party," if it made a "qualified offer;" I.R.C § 7430(c)(4)(E)(ii)(II), however, provides an exception to this rule.  Gov't Opp. at 17.  Specifically, the "qualified offer"

---

[8] BASR avers that, on behalf of the trust, William Pettinati, Jr. has paid $134,500 of the total of $337,019.69 in litigation costs requested.  Pl. Supp. Mem. Ex. F.  The remaining amount was paid by William Pettinati, Sr. and by Virginia Pettinati.  Pl. Supp. Mem. Ex. F.

[9] For example, when signing as trustee, it was Mr. Pettinati, Jr.'s practice to clearly indicate as much in the signature block, which is what he did when he signed the BASR Partnership Agreement as trustee.  Gov't App. 256 (signature page of 1998 BASR Partnership Agreement).

[10] Section 26.01 of the Texas Business And Commerce Code provides:

(a) A promise or agreement described in Subsection (b) of this section is not enforceable unless the promise or agreement, or a memorandum of it, is
    (1) in writing; and
    (2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him.
(b) Subsection (a) of this section applies to . . .
    (6) an agreement which is not to be performed within one year from the date of making the agreement[.]

TEX. BUS. & COM. CODE ANN. § 26.01(b)(6).  In other words, under Texas law, any agreement to provide services that will last more than a year is within the statute of frauds.

provision does not apply to "*any proceeding in which the amount of tax liability is not in issue*." Gov't Opp. at 17 (quoting I.R.C. § 7430(c)(4)(E)(ii)(II) (emphasis added)). Here, "the [c]ourt's . . . judgment in this case . . . did not determine the tax liability of any partner, or order any refund, but rather was limited to [re-determining] the adjustments made to BASR's partnership items in the FPAA[.] The qualified-offer provisions therefore cannot be applied to determine whether any taxpayer's liability pursuant to the judgment was equal to or less than it would have been under a qualified offer." Gov't Opp. at 19.

        **b.**        **The "Qualified Offer" Provision Does Not Apply, Because There Was No "Qualified Offer Period."**

In addition, BASR's offer to settle for $1 was not made during the "qualified offer period." Gov't Opp. at 20. I.R.C § 7430(g)(2) provides that the "qualified offer period" begins "the date on which the [first] letter of proposed deficiency which allows the taxpayer an opportunity for administrative review in the Internal Revenue Service Office of Appeals is sent." Gov't Opp. at 20 (quoting I.R.C. § 7430(g)(2)(A). In this case, the IRS never sent a "letter of proposed deficiency" and so no "qualified offer period" ever commenced. Gov't Opp. at 20. The FPAA issued to BASR by the IRS did not qualify as a "letter of proposed deficiency," because it did not identify the tax due, interest, additional amounts, additions to the tax, and/or any assessable penalties. *See* I.R.C. § 7522. In addition, I.R.C. § 7430(g)(2)(A) specifies that the "qualified offer period" begins with the first letter of proposed deficiency that "allows the taxpayer an opportunity for administrative review." *Id.* A FPAA, however, does not afford the taxpayer an opportunity for an IRS Office of Appeals administrative review, because a FPAA is considered a final administrative determination. Gov't Opp. at 23 (citing I.R.C. § 6223(a)(2)).

        **c.**        **The Offer Was A "Sham."**

In any event, BASR's "qualified offer" was a "sham," because it does not meet the requirements of I.R.C § 7430(g). Gov't Opp. at 25. Although the statute does not define "offer," that term is construed to mean "[t]he act or an instance of presenting something for acceptance[.]" BLACK'S LAW DICTIONARY 1253 (10th ed. 2014). In offering $1 as a proposed settlement, "[P]laintiff never satisfied the statutory requirement to make an 'offer[,]' because [P]laintiff never attempted to settle this case by presenting anything of significance[.]" Gov't Opp. at 25. In fact, this "offer was not a good-faith attempt by [P]laintiff to settle this case, but . . . made for the purpose of shifting [P]laintiff's litigation costs to the United States[.]" Gov't Opp. at 27.

        **5.**        **The Court Should Exercise Its Discretion To Deny Awarding Litigation Costs.**

Even if the court were to determine that BASR was eligible for an award of litigation costs, the court should exercise its discretion to deny an award in this case, because it would be unjust, under the circumstances, to require the Government to pay BASR's litigation costs. Gov't Opp. at 29. This is so, because the Pettinatis benefitted from an invalid "Son of Boss" tax scheme and avoided additional tax liability due to the IRS's failure to issue the FPAA within the statute of limitations. *See BASR Partnership*, 113 Fed. Cl. at 194.

### 6.     BASR's Requested Litigation Costs Are Not "Reasonable."

Finally, if the court does grant an award of litigation costs, it should be substantially reduced because the amount requested by BASR is unreasonable and includes costs that are not recoverable under I.R.C § 7430.  Gov't Opp. at 30.

### a.     BASR May Not Recover Attorney Fees Above The Statutory Maximum.

The attorney fees requested by BASR are unreasonable, because: (1) the issues involved in this case were not difficult or complex;[11] and (2) BASR failed to establish that there were no available attorneys with tax experience in the Houston, Texas area who would assume representation at the statutory rate, or that the prevailing market rate was higher than the statutory rate established by Congress.  Gov't Opp. at 31–34.

### b.     BASR May Not Recover Litigation Costs Incurred In Connection With Proceedings Before The Internal Revenue Service And The United States Tax Court.

The Government adds that the reasonable litigation costs that may be recovered under I.R.C § 7430 are limited to those "incurred in connection with *such* court proceeding."  I.R.C. § 7430(a)(2)(emphasis added).  BASR, however, also seeks recovery for litigation costs incurred in a Collection-Due-Process ("CDP") Hearing before the IRS, and for fees and costs incurred in related litigation before the United States Tax Court.  Pl. Mem. Ex. C at 3 (entries include "Filing Fees – (U.S. Tax Court) Petition Filing Fee"); Pl. Mem. Ex. D at 3, 4, 5, 6, 7, 14, 15, 20, 21, 22, 23, 25, 26, 27 (entries include, for example, "Attention to tax lien"; "Attention to collection [due

---

[11] The Government cites to Treasury Regulation § 301.7430–4, that explains the standard for when the IRS will pay administrative costs above the statutory rate.  Treasury Regulation § 301.7430–4(b)(3)(iii)(E) provides that:

> In determining whether the difficulty of the issues justifies an increase in the $125 per hour limitation on the applicable hourly rate, the Internal Revenue Service will consider the following factors:
> (1) The number of different provisions of law involved in each issue.
> (2) The complexity of the particular provision or provisions of law involved in each issue.
> (3) The number of factual issues present in the proceeding.
> (4) The complexity of the factual issues present in the proceeding.

Treas. Reg. § 301.7430–4(b)(3)(iii)(E).

The Government argues that none of these factors were met, because this case involved a "pure question of law" that was "straightforward and narrow"—*i.e.*, whether the fraud exception to the normal three year statute of limitations, I.R.C. § 6501(c)(1), applied only to cases in which the tax payer had the requisite fraudulent intent.  Gov't Opp. at 32.

process] issues"; "Conference . . . on CDP issues"; "Petitioning Tax Court regarding Notice of Determination"; "Attention to documents regarding IRS's collection efforts"; "Answer to petition to Tax Court"; "Attention to collection case before the Tax Court"; and "Attention to motion to continue Tax Court case"). BASR may not recover any of these litigation costs.

### c.    BASR May Not Recover Paralegal Fees For "Merely Clerical Tasks."

Work performed by paralegals is compensable only if it otherwise would have been performed by an attorney, *e.g.*, not "purely clerical." *See Miller v. Alamo*, 983 F.2d 856, 862 (8th Cir. 1993) (holding that paralegal work involving going to a library to locate cases was compensable, because it would otherwise have been performed personally by the plaintiff's attorneys and so was not clerical in nature). In this case, the paralegals performed "printing out and organizing emails," and "review and index discovery responses;" that is "purely clerical" and cannot be recovered under I.R.C. § 7430.

### d.    BASR May Not Recover Litigation Costs Incurred In Connection With An Unsuccessful Discovery Motion.

Finally, BASR cannot recover for time spent preparing a September 4, 2012 Motion To Compel (ECF No. 22) or for time spent preparing for the court's September 6, 2012 telephone conference discussing that Motion and the Government's September 4, 2012 Response, because BASR's Motion was rendered moot by a subsequent court order. Gov't Opp. at 39 (citing *Miller*, 984 F.2d at 871 (holding that the plaintiff could not recover fees for time spent on "unsuccessful motions.")).

## C.    Plaintiff's Reply.

### 1.    BASR "Incurred" Litigation Costs, Required By Texas Partnership Law.

BASR replies that this case was a partnership-level proceeding brought by BASR's tax matters partner and BASR incurred all of the litigation costs claimed, because it is legally liable to reimburse the partners for those fees and costs under Texas state law. Pl. Reply at 2, 3–4 (citing TEX. BUS. ORG. CODE ANN. §§ 11.052(b), 11.055, 152.703, 152.704(1); *see also Long v. Lopez*, 115 S.W.3d 221, 228 (Tex. App. 2003) ("If a partner reasonably incurs a liability in excess of the amount he agreed to contribute in properly conducting the business of the partnership or for preserving the partnership's business or property, he is entitled to be repaid by the partnership for that excess amount.")).

The Government does not dispute that BASR's partners engaged Sutherland Asbill to file this case on BASR's behalf or that the majority of fees paid to Sutherland Asbill were for the legal services regarding BASR's 1999 partnership tax returns. Pl. Reply at 2. But, BASR did not engage nor pay Sutherland Asbill, because BASR has no assets, and under Section 2.5 of BASR's

Partnership Agreement, the Managing Partner[12] is entitled "to reimbursement for reasonable out-of-pocket expenses incurred by him on behalf of the Partnership or in pursuance of his duties as Managing Partner." Pl. Reply Ex. A § 2.5. Section 9.2 of the Partnership Agreement also states that "[e]ach Partner shall, to the extent permitted by law, be indemnified and held harmless by the Partnership from and against any and all . . . expenses (including reasonable legal fees and expenses) . . . arising from any and all claims, costs, demands, actions, suits or proceedings, civil, criminal, administrative or investigative, in which the Partner may be involved." Pl. Reply Ex. A § 9.2.

The United States Supreme Court has held that, "[i]n applying the Internal Revenue Code, state law controls in determining the nature of the legal interest which the taxpayer has in property." *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 714 (1985). BASR was organized in Texas, and Texas law requires that a partnership must reimburse partners who advance legal fees on the partnership's behalf. Pl. Reply at 3 (citing *Long*, 115 S.W.3 at 228). Texas law also provides that a partner tasked with winding up a partnership's business is authorized to prosecute and defend civil, criminal, or administrative suits on the partnership's behalf. *See* TEX. BUS. ORG. CODE ANN. §§ 11.052(b), 11.055, 152.703. Partnerships are bound by these obligations, and all partners are liable to contribute funds in proportion to their partner shares to fulfill any obligations that arise as a result. *See* TEX. BUS. ORG. CODE ANN. §§ 152.704 ("A partnership is bound by a partner's act . . . that is appropriate for winding up[.]"); 152.705(a) ("[T]he losses with respect to which a partner must contribute under Section 152.708(a) include losses from a liability incurred under Section 152.704."); 152.708(a)(1) ("[E]ach partner shall contribute, in the proportion in which the partner shares partnership losses, the amount necessary to satisfy partnership obligations[.]"). Although BASR is "no longer a going concern" several of its partners incurred the litigation costs on its behalf, and each partner is required to contribute to the partnership to cover this obligation. Pl. Reply at 4.

### 2. BASR Is A "Prevailing Party."

#### a. BASR Was A "Party" To The TEFRA Proceeding.

The Government's "real-party-in-interest" argument is "backwards," because the federal appellate court in *Unification Church* held that, under the "real-party-in-interest" doctrine, "the court *shall consider* . . . the qualification . . . of those parties that will be themselves liable for fees if court-awarded fees are denied." Pl. Reply at 5 (quoting *Unification Church*, 762 F.2d at 1082 (emphasis added)). In this case, BASR is liable to its partners under Texas law and is therefore a "real-party-in-interest." Pl. Reply at 5.

In addition, the Government's "real-party-in-interest" argument is contrary to the provisions of I.R.C § 7430 that allow a partnership to qualify for a fee award. I.R.C § 7430 derives its net-worth requirements from the EAJA, 28 U.S.C. § 2412(d)(2)(B), and that statute provides

---

[12] Under the terms of BASR's Partnership Agreement, William F. Pettinati, Sr. is both the Tax Matters Partner and the Managing Partner. Pl. Reply Ex. A §§ 2.1 ("From and as of the date of this Agreement, William F. Pettinati, Sr. shall be the Managing Partner."), 7.8 ("Unless otherwise required by law, the tax matters partner within the meaning of [I.R.C. § 6231(a)(7)] shall be the Managing Partner.").

that a "party" must be *either* an individual whose net worth does not exceed $2,000,000 *or* a partnership with a net worth that does not exceed $7,000,000 and does not have more than 500 employees. *See* I.R.C. § 7430(c)(4)(A)(ii); 28 U.S.C. § 2412(d)(2)(B). By the Government's logic, "a court would always have to test the net worth of all of the partnership's partners—who will always bear the litigation cost as partners in the partnership." Pl. Reply at 5. "That is not the law." Pl. Reply at 5. In fact, Treasury Regulation § 301.7430-5(g)(5) provides that a TEFRA partnership may recover fees under I.R.C. § 7430, provided that it meets the relevant net worth and size limitations. If the Government's argument is correct, it would make that regulation superfluous. Pl. Reply at 6.

**b.    Even if BASR Was Not A "Party," BASR's Partners Meet The Net-Worth Requirement.**

"Even if the [c]ourt were to find . . . that only BASR's partners are 'parties' for purposes of [I.R.C. §] 7430, . . . this [c]ourt properly found that the partners in BASR were Bingle Investments LLC, Falba Investments LLC, Winding Oak Investments LLC, and Watermill Investments LLC," but the Government did not appeal that finding and is precluded from now arguing to the contrary. Pl. Reply at 7. "[I]f the [c]ourt were to 'look through' the single-member LLCs for purposes of determining who may be a party for purposes of Section 7430 (which we believe would be contrary to the [c]ourt's Order . . .), two of those four partners (the two Gift Trusts that owned Watermill Investments LLC and Winding Oak, Investments LLC respectively) meet the net-worth requirements. And each of those two trusts are legally liable to BASR and BASR's other partners for their proportionate shares of the litigation costs . . . . Their proportional share of the litigation costs is $81,285.17. The [c]ourt should alternatively award that amount." Pl. Reply at 8 (footnotes omitted).

William Pettinati, Jr.'s net worth is irrelevant, however, because he has never been a partner in BASR. Pl. Reply at 8–9. "Although [William Pettinati, Jr.] was a beneficiary of the Pettinati 1998 Gift Trust f/b/o William Pettinati Jr., that trust is a complex trust that reports its own tax liability . . . but not its beneficiaries." Pl. Reply at 9. Therefore, the Trust is legally liable for some of the fees that Mr. Pettinati, Jr. paid to Sutherland Asbill. Pl. Reply at 9.[13] This is so, because Mr. Pettinati, Jr. "was empowered as trustee 'to commence or defend . . . at the expense of the trusts, such litigation with respect to such trust estates as the Trustee considers advisable." Pl. Reply at 9; *see also* Gov't' App. 238 (containing Section 4.1(r) of the 1998 Pettinati Trust Agreement). Texas law allows a trustee to "compromise, context, arbitrate, or settle claims of or against the trust estate or the trustee." Pl. Reply at 9 (quoting TEX. PROP. CODE ANN. § 113.019). As such, the Trust is obligated to reimburse Mr. Pettinati, Jr. for the reasonable costs incurred during his term as Trustee. Pl. Reply at 10. In any event, the Government's argument that William Pettinati, Jr. did not pay fees on behalf of the Trust "is absurd," because "William Pettinati Jr.'s only interest in the outcome as this case was, as the [G]overnment recognizes, 'as the beneficiary of the gift trust.'" Pl. Reply at 10 n. 6 (citing Gov't Opp. at 14).

---

[13] BASR avers that, on behalf of the trust, William Pettinati, Jr. has paid $134,500 of the total in $337,019.69 in the attorney and paralegal fees and litigation costs requested. Pl. Supp. Mem. Ex. F. The remaining amount was paid by William Pettinati, Sr. and by Virginia Pettinati. Pl. Supp. Mem. Ex. F.

### c.     BASR Made A Proper "Qualified Offer."

The Government also mischaracterizes the "qualified offer" provisions of I.R.C § 7430, by arguing that tax liability was not "in issue." *See* I.R.C. § 7430(c)(4)(E)(ii)(II). Tax liability was "in issue," as a partnership-level proceeding "bindingly determines all partnership items that feed directly into computing the partners' tax liability." Pl. Reply at 11 (citing I.R.C. § 6230(c)(4)). The Government's contention that tax liability "in issue" means only "directly in issue" conflicts with *United States v. Woods*, 134 S. Ct. 557 (2013). In *Woods*, the United States Supreme Court held that federal courts have jurisdiction in TEFRA partnership-level federal-tax proceedings to determine penalties that affect tax-liability at the partner level, so that a federal court was "not required to shut its eyes" to the partner-level tax effects of partnership-level determinations. *Id.* at 564. The Government's view also conflicts with a regulation implementing I.R.C. § 6404(g), a statute that suspends underpayment interest, after a certain amount of time has passed, and accrues again when the IRS sends the taxpayer a notice "specifically stating the taxpayer's liability and the basis for the liability;" a FPAA is "sufficient notice" of tax liability to allow the interest to start accruing again. Pl. Reply at 12–13 (citing I.R.C. § 5404(g)(1)(A); Treas. Reg. § 301.6404-4(a)(7)(ii)).

In addition, either the issuance of the FPAA or the Government's Answer commenced the "qualified offer period." Pl. Reply at 13–15. Treasury Regulation § 301.7430–3(c)(3) treats a FPAA as a "notice of deficiency" that serves to start the "qualified offer period." *See* Treas. Reg. § 301.7430-3(c)(3). For this reason, the United States Court of Appeals for the Fifth Circuit has held that a FPAA is the "functional equivalent of a notice of deficiency." *Sealy Power, Ltd. v. Comm'r*, 46 F.3d 382, 385–85 (5th Cir. 1995) (holding that a FPAA is the functional equivalent of a notice of deficiency because it "serve[s] to afford affected taxpayers that the Commissioner has made a final administrative determination of their liability for particular tax years"). Alternatively, the Government's August 10, 2010 Answer began the "qualified offer period," as Treasury Regulation § 301.7430–7(c)(7) provides that the qualified offer period begins when the Government files its answer. BASR adds that the "qualified offer" of $1 was not a "sham," as the Government argues, and there is no basis for the court to exercise its discretion to deny an award. Pl. Reply at 15–18.

### 3.     BASR's Requested Litigation Costs Are "Reasonable."

BASR contends that the attorney fees requested are "reasonable" because the legal issues involved were difficult as well as novel, and the requested hourly rate is in line with the prevailing rate in the community for complex litigation. Pl. Reply at 19. With respect to the fees and costs incurred regarding proceedings before the IRS and the United States Tax Court, those proceedings occurred because the IRS assessed tax and instituted collection actions against BASR's partners while the TEFRA proceeding was pending in the United States Court of Federal Claims, and I.R.C § 7430 allows a taxpayer to recover "reasonable litigation costs incurred in connection with such court proceeding." Pl. Reply at 20 (quoting I.R.C. § 7430(a)(2) (emphasis added)). To the extent that court is inclined to deny that portion of the fee request, it amounts to $21,395.[14] As to

---

[14] This amounts to 56.3 hours of associate time at $250 an hour and 18.3 hours of partner time at $400 an hour. Pl. Reply. Ex. E (showing time entries for collection case before IRS and United States Tax Court).

the Government's objection that Sutherland Asbill's paralegal work was "purely clerical," a review of the work shows that paralegals organized documents and cite checked pleadings and briefs, all of which was work that "if not performed by the paralegal, would have been performed personally by the [plaintiff's] attorneys." Pl. Reply at 20 (quoting *Miller*, 983 F.2d at 862 (holding that paralegal work involving going to a library to locate cases was compensable because it otherwise would be performed personally by the plaintiff's attorneys and was not purely clerical in nature)). In addition, the time Sutherland Asbill spent preparing the September 4, 2017 Motion To Compel was "reasonable." Pl. Reply at 22.

**4.  BASR Is Entitled To An Award Of Additional Attorney Fees Incurred In Connection With The March 7, 2016 Motion For Litigation Costs And Post-Trial Litigation.**

BASR also requests additional "fees for fees," to recover for litigation costs incurred to prepare and support the March 7, 2016 Motion For Litigation Costs. Pl. Reply at 22 (citing *Larsen*, 39 Fed. Cl. at 171 (awarding fees that "relate to the present dispute over plaintiff's general entitlement to fees and costs")).  Accordingly, BASR seeks additional attorney' fees for 24.9 partner hours and 59.6 associate hours, or an additional $24,860 in attorney fees, bringing the total request to $325,140.69.  Pl. Reply at 23.

**D.  The Government's Sur-Reply.**

The Government counters that BASR's "new theory" that it incurred the litigation costs, because of the partners' legal obligations under Texas partnership law has "no basis in law and fact." Gov't Sur-Reply at 2. First, "[t]he partners, rather than the partnership entity, are the parties in a TEFRA proceeding." *Foothill Ranch*, 110 T.C. at 99. BASR's Partnership Agreement states that BASR's partners are: William Pettinati, Sr., Virginia Pettinati; and two gift trusts, *i.e.*, the 1998 Gift Trust for William F. Pettinati, Jr., and the 1998 Gift Trust for Andrew P. Pettinati. Gov't Sur-Reply at 2. Therefore, BASR's partners are not single-member LLCs under the Partnership Agreement. Gov't Sur-Reply at 3.

Second, BASR is no longer a going concern and has "zero assets" to reimburse the Pettinatis for their litigation costs. Gov't Sur-Reply at 4 (citing Pl. Reply Ex. C). "[T]he fact that BASR . . . has never reimbursed the Pettinatis for any of the litigation costs . . . and that the Pettinatis have not previously sought reimbursement from BASR, strongly indicates that BASR was never under any obligation to do so under the partnership agreement or Texas law[.]" Gov't Sur-Reply at 4. BASR's Partnership Agreement provides that BASR's partners "have no obligation to make further contribution to the Partnership beyond their initial contributions," and any obligation that BASR may have to indemnify its partners for legal fees is limited "to the extent of any Partnership Assets." Gov't Sur-Reply at 4 n.2.

Moreover, BASR mischaracterizes Treasury Regulation § 301.7430-3(c)(3) to conclude that a FPAA must be treated as a notice of deficiency for purposes of triggering the "qualified offer period," because that regulation specifies that a FPAA must be treated as a notice of deficiency,

"*only* for purposes of determining reasonable *administrative costs* under section 7430."[15] Gov't Sur-Reply at 6 (quoting Treas. Reg. § 301.7430-3(c)(3) (emphasis added)).

### E.    Plaintiff's Supplemental Filing.

BASR's December 1, 2016 Supplemental Filing seeks additional attorney and paralegal fees for 24.6 hours spent by a partner at $400 an hour; 6.3 hours spent by an associate at $250 an hour; and 3.2 hours spent by a paralegal at $145 an hour,[16] increasing the fee award by $11,879, or a total of $337,019.69.  Pl. Supp. Mem. at 2.  Included with the Supplemental Filing is a November 9, 2016 Declaration of Timothy R. Lavender, an attorney and partner at Kelley Drye & Warren, LLP in Chicago, Illinois, who testified that Sutherland Asbill's billing rate for partners, associates, paralegals, and support staff was "respectively quite low," in comparison to other professionals in Washington, D.C., with similar skills, experience, and reputation for tax matters. 11/9/16 Lavender Decl. at ¶¶ 2, 3, 5.  In addition, the amount of time spent on this case was appropriate and reasonable.  11/9/16 Lavender Decl. at ¶ 4.

### F.    The Government's Supplemental Response.

The Government responds to Mr. Lavender's November 9, 2016 Declaration by arguing that the prevailing market rate in Washington, D.C. is not a "special factor" that would justify an increase in the statutory rate.  *See Pierce v. Underwood*, 487 U.S. 552, 571–72 (1988) (holding that, with respect to the EAJA, the local or national market rate for legal services cannot be a special factor used to increase the rate beyond the statutory rate).  Thus, Mr. Lavender's Declaration that the rates requested for Sutherland Asbill are lower than the market rate for representation is irrelevant.  Govt. Supp. Resp. at 2.  Nor does Mr. Lavender's November 9, 2016 Declaration address any "local availability of tax expertise" in Washington, D.C., (where the United States Court of Federal Claims is located), or in Houston, Texas (where Mr. William F. Pettinati, Jr., lives).  Gov't Supp. Resp. at 3.

Moreover, the Government argues that the additional litigation fees—*i.e.,* the fees incurred after the filing of the March 7, 2016 Motion For Attorney Fees—exceeded the current statutory rate of $200, and that BASR has made no showing that any special factor warrants an enhanced rate in this case.  Gov't Supp. Resp. at 3.

---

[15] The Government also argues that BASR's computation of costs incurred in connection with the separate proceedings before the IRS and the United States Tax Court was improper, and there were additional costs and fees incurred in connection with those proceedings.  Gov't Sur-Reply at 8.

[16] Although BASR previously requested paralegal fees at a rate of $150 an hour (Pl. Mem. at 10), the $11,879 increase asked for in the December 1, 2016 Supplemental Filing results from a calculation of a rate for paralegals at $145 an hour ((24.6 x 400) + (6.3 x 250) + (3.2 x 145)=11,879).  For sake of consistency, the court assumes that BASR intended all paralegal hours to be awarded at a rate of $150 an hour.

### G.      The Court's Resolution.

#### 1.      BASR Is A "Prevailing Party" Under I.R.C § 7430.

The first issue to be determined by the court is whether BASR is a "prevailing party" under I.R.C § 7430(a), that provides:

> [i]n any administrative or court proceeding which is brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty . . . the *prevailing party* may be awarded a judgment or a settlement for (1) reasonable administrative costs incurred in connection with such administrative proceeding with the Internal Revenue Service, and (2) *reasonable litigation costs incurred in connection with such court proceeding.*

I.R.C. § 7430(a) (emphasis added).

The term "prevailing party" is defined in I.R.C § 7430(c)(4) as: "any party in any proceeding which subsection (a) applies," *i.e.,* a party to any "administrative or court proceeding brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty[.]" A "party" to one of the proceedings referenced in I.R.C § 7430(c)(4) may not be considered a "prevailing party," unless that party meets the net-worth requirements of section 2412(d)(2)(B) of the EAJA. *See* I.R.C. § 7430(c)(4)(A)(ii).

Section 2412(d)(2)(B) of the EAJA defines a "party" as:

> (i) an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed, or (ii) . . . any partnership . . . the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed[.]"

28 U.S.C. § 2412(d)(2)(B).

To be considered a "prevailing party" under I.R.C. § 7430, a "party" must also establish that it "substantially prevailed" with respect either to the amount in controversy or with respect to the most significant issue or set of issues presented, and also must show that the Government's position was not "substantially justified." I.R.C. § 7430(c)(4)(A)–(C). These requirements are waived, however, if the final judgment in the court proceeding is equal to or less than the amount of a party's "qualified offer." I.R.C. § 7430(c)(4)(E), (g).

Therefore, in this case, the court must determine whether BASR is a "party" under I.R.C § 7430. The next step is to determine whether BASR properly made a "qualified offer." *See* I.R.C § 7430(c)(4)(E). If each of these elements is established, BASR is entitled to be considered a "prevailing party."

### a.    BASR Is A "Party," Under I.R.C § 7430(c)(4).

The Government argues that BASR was never a "party" in this case, that originated as a "petition for readjustment of partnership items," filed by William F. Pettinati, Sr., in his capacity as BASR's Tax Matters Partner, pursuant to I.R.C. § 6226. Compl. ¶ 1.  Under I.R.C. § 6226(a), a tax matters partner may file a petition for a readjustment of a FPAA with the United States Court of Federal Claims.  *See* I.R.C. § 6226(a)(3) ("Within 90 days after [notice of a FPAA], the tax matters partner may file a petition for a readjustment of the partnership items for such taxable year . . . with the Court of Federal Claims.").  I.R.C. § 6226(c) provides that the parties may include "*each person who was a partner* in [the] partnership at any time during [the relevant partnership taxable year]."  I.R.C. § 6226(c) (emphasis added).  The United States Tax Court has interpreted I.R.C. § 6226(c) as standing for the proposition that "the partners, rather than the partnership entity, are the parties in a TEFRA proceeding."  *Foothill Ranch*, 110 T.C. at 99 (citing I.R.C. § 6226(c)).

The Rules of the United States Court of Federal Claims ("RCFC") also provides, in Appendix F, that:

> [f]or purposes of this Appendix, the United States, the partner who filed the complaint, the tax matters partner, and each person who satisfies the requirements of Code Section[] 6226(c) . . . shall be treated as parties to the action.

RCFC App'x F Rule 6(a).

The April 16, 2010 Complaint did not identify the BASR partnership entity as a party; but William F. Pettinati Sr., was identified as a plaintiff, acting as BASR's designated Tax Matters Partner.  Compl. ¶¶ 2, 10.  The following entities also were identified as partners of BASR under the subheading "The Parties": (1) Bingle Investments LLC; (2) Falba Investments LLC; (3) Winding Oak Investments LLC; (4) Watermill Investments LLC; and (5) Cypress Investments, Inc. Compl. ¶¶ 8–9.

Nevertheless, BASR argues that, as a partnership, it should be considered a "party" to this case for purposes of I.R.C § 7430, because of the relevant regulation promulgated by the Secretary of the Treasury.  *See* Treas. Reg. § 301.7430–5(g)(5) (governing TEFRA partnerships seeking administrative fees pursuant to I.R.C § 7430).  Treasury Regulation § 301.7430–5 provides that, "in cases involving partnerships subject to the unified audit and litigation procedures [of TEFRA], the TEFRA partnership meets the net worth and size limitations requirement" when its net worth does not exceed $7,000,000 and the partnership does not have more than 500 employees.  Treas. Reg. § 301.7430–5(g)(5)(i).

Treasury Regulation § 301.7430–5 provides the net-worth requirements for both TEFRA partnerships *and* for partners who are parties to a TEFRA partnership-level proceeding.  *See* Treas. Reg. § 301.7430–5(g)(5) (providing that "*in addition*, *each partner* requesting fees pursuant to [I.R.C. §] 7430 must meet the appropriate net worth and size limitations set forth in paragraph (g)(1), (g)(2), or (g)(3) of this section." (emphasis added)).  Paragraph (g)(1) provides the net worth limitation for natural persons, (g)(2) provides the net worth limitations for estates and trusts, and paragraph (g)(3) provides that a "taxpayer that is a *partnership* . . . . meets the net worth and size limitations" if its net worth does not exceed seven million dollars and it does not have more than 500 employees.  *See* Treas. Reg. § 301.7430–5(g)(1)–(3).

In short, this Regulation provides that either the TEFRA partnership or the individual partners may request litigation costs. *See* Treas. Reg. § 301.7430–5(g)(1)–(5). Paragraph (g)(3) provides the net worth requirement for the situation where the individual partners are partnerships. *See* Treas Reg. § 301.7430–5(g)(3) (providing the net worth and size limitations for taxpayers that are partnerships). Paragraph (g)(5) would be superfluous if it only applied to situations where an individual partner seeking attorney fees was a partnership; as the text states "*the* TEFRA partnership" must meet the net-worth requirements. *See* Treas. Reg. § 301.7430–5(g)(5). The placement of the article "the" designates that the TEFRA partnership, not only its partners, are subject to the net-worth requirements of I.R.C. § 7430 and may recover for attorney fees as a "party."

Therefore, the court has determined that a partnership that is subject to a TEFRA partnership-level proceeding is a "party" that may request litigation costs, subject to the statutory requirements of I.R.C § 7430, including the net-worth requirements of the EAJA. This interpretation is consistent with TEFRA, because it was enacted to "creat[e] a single unified procedure for determining the tax treatment of all partnership items at the partnership level, rather than separately at the partner level." *Keener v. United States*, 551 F.3d 1358, 1361 (Fed. Cir. 2009) (quoting *In re Crowell*, 305 F.3d 474, 478 (6th Cir. 2002)).

As such, BASR was a partnership subject to a TEFRA partnership-level proceeding initiated by Mr. Pettinati, Sr. in his capacity as the Tax Matters Partner. And, both parties agree that BASR meets the net-worth requirements of the EAJA, 28 U.S.C. 2412(d)(2)(B), since it has a net worth of $0 and no employees. Pl. Reply Ex. C (5/9/16 Affidavit of William Pettinati Sr. stating that BASR has "zero assets"). This is less than the $7,000,000 net worth and 500 employee minimums set by the EAJA. *See* 28 U.S.C. § 2412(d)(2)(B). For these reasons, the court has determined that BASR is a "party" under I.R.C. § 7430(c)(4).

### b.   BASR Made A "Qualified Offer" And Is Therefore A "Prevailing Party" Under I.R.C § 7430(c)(4)(E).

BASR argues that it made a "qualified offer" and therefore is a "prevailing party" exempt from demonstrating that it "substantially prevailed," with respect to the most significant issue or set of issues presented, because the court's final judgment was equal to or less than the amount of BASR's qualified offer. *See* I.R.C. § 7430(c)(4)(E). Therefore, the court must next determine whether the "qualified offer" rule applies to this proceeding, and whether BASR made a "qualified offer."

### i.   Tax Liability Was "In Issue" In This Case.

I.R.C. § 7430(g)(1) defines a "qualified offer," as a written offer that: (A) is made during the "qualified offer period;" (B) specifies the offered amount of the taxpayer's liability (determined without interest); (C) is designated as a "qualified offer" for purposes of I.R.C. § 7430; and (D) remains open until the date of trial, the date of rejection, or until 90 days have elapsed, whichever occurs first. *See* I.R.C. § 7430(g)(1)(A)–(D).

The "qualified offer" rule, however, does not apply in "any proceeding in which the amount of tax liability is not in issue, including any declaratory judgment proceeding, any proceeding to enforce or quash any summons issued pursuant to this title, and any action to restrain disclosure under [I.R.C. §] 6110(f)."  I.R.C. § 7430(c)(4)(E)(ii)(II).  In this case, the Government argues that tax liability is not "in issue," because, under TEFRA, partnership-level FPAA review proceedings do not determine the tax liability of any partner.  Gov't Opp. at 17.  Instead, FPAA judicial review proceedings determine the tax treatment of partnership items.  *See* I.R.C. § 6226(f) ("[The] court . . . shall have jurisdiction to determine all partnership items of the partnership for the partnership taxable year to which the [FPAA] relates, the proper allocation of such items among the partners, and the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item.").  The tax liability of individual partners then are determined in subsequent proceedings at the partner level.  *See* I.R.C. § 6230(a)(1)–(2) (providing procedures under which the IRS may make "computational adjustments" to the tax liability of individual partners); *see also Woods*, 134 S. Ct. at 563 ("Once the adjustments to partnership items have become final [under TEFRA], the IRS may undertake further proceedings at the partner level to make any resulting 'computational adjustments' in the tax liability of the individual partners.").

Although the Government is correct that the partners' final tax liability is determined at the partner level, it is not correct that tax liability was not "in issue" in this case.  The partnership-level FPAA review proceeding conclusively determines the tax treatment of all partnership items, determining each individual partner's tax liability:

> [T]he treatment of partnership items on the partnership return . . . under the [FPAA], or under the decision of the court (whichever is appropriate) shall be *conclusive.*  In addition, the determination under the FPAA or under the decision of the court (whichever is appropriate) concerning the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item *shall also be conclusive.*  Notwithstanding the preceding sentence, the partner shall be allowed to assert any partner level defenses that may apply or to challenge the amount of the computational adjustment.

I.R.C. § 6230(c)(4) (emphasis added).

As the United States Supreme Court recognized, the court in a partnership-level TEFRA proceeding is "not required to shut its eyes" to the tax consequences of the court's decision, even if the "formal adjustment" of the partners tax liability will occur at a subsequent proceeding.  *See Woods*, 134 S. Ct. at 565.  The statute of limitations defense successfully raised by BASR in this case was held to be a partnership-level item by our appellate court.  *See BASR Partnership*, 795 F.3d at 1354 ("[T]ax is paid only on the partner's individual returns, but [a partnership's] tax treatment is determined and assessed at the partnership level");  *see also Keener*, 551 F.3d at 1363 (holding that the statute of limitations is a "partnership item" under TEFRA); *Prati v. United States*, 603 F.3d 1301, 1307 (Fed. Cir. 2010) ("Based on *Keener*, we hold that the statute of limitations issue is a partnership item."); *see also* I.R.C. §§ 6229 (providing the statute of limitations for assessing any tax attributable to a partnership item), 6501 (providing the statute of limitations for assessing tax under the I.R.C.).  By raising this defense, BASR's partners incurred no tax liability.  In addition, that tax liability was "in issue" in this case is evident from the

Government's April 28, 2016 Response, wherein the Government the potential effect of the FPAA, if it was not untimely under the statute of limitations: "victory [for the Government] would have resulted in increases in tax liability for BASR's . . . partners . . . collectively equal to the tax on the $6.6 million gain passed through to them by BASR from the sale of the Pettinatis' family business." Gov't Resp. at 27.

### ii.    A "Qualified Offer" Was Made During The "Qualified Offer Period."

To be considered a "qualified offer," the taxpayer's offer must be made during the "qualified offer period." I.R.C. § 7430(g)(1). The "qualified offer period" is defined as the period "beginning on the date on which the first letter of proposed deficiency which allows the taxpayer an opportunity for administrative review in the [IRS] Office of Appeals is sent" and "ending on the date which is 30 days before the date the case is first set for trial." I.R.C. § 7430(g)(2)(A)–(B).

On July 12, 2012, in response to the IRS's January 20, 2010 FPAA, BASR sent the IRS a letter designated as a "qualified offer," to settle all outstanding claims by the IRS with respect to the applicable tax years for which the FPAA was issued. Pl. Mem. Ex. A. Because the court decided this case on summary judgment, BASR's offer was made more than 30 days before the date the case was first set for trial. The Government argues, however, that this offer was not made during the "qualified offer period" because the FPAA was not a "letter of proposed deficiency" that serves to commence the "qualified offer period" under I.R.C § 7430(g)(1). Gov't Resp. at 20–21.

The Government's argument, however, is contrary to Treasury Regulation § 301.7430-3(c)(3) that provides, for the purposes of determining reasonable administrative costs under I.R.C. § 7430, a FPAA is equivalent to a notice of deficiency that commences the "qualified offer period."[17] In addition, the United States Court of Appeals for the Fifth Circuit has held that "[a] FPAA is the functional equivalent of a notice of deficiency." *Sealy Power, Ltd. v. Comm'r*, 46 F.3d 382, 385–85 (5th Cir. 1995).

In *Clovis I v. Comm'r*, 88 T.C. 980, 981 (1987), the United States Tax Court also determined that:

> The FPAA is to [TEFRA litigation] what the statutory notice of deficiency is to tax controversies before [the United States Tax Court] that involve [an IRS] determination of a deficiency, *i.e.,* it is the notice to affected taxpayers that [the IRS] has made a final administrative determination for the particular tax years.

*Id.*

---

[17] The Government concedes that Treasury Regulation § 301.7430-3(c)(3) treats the FPAA as a notice of deficiency that commences the "qualified offer period" for recovery of *administrative costs* under I.R.C § 7430. Gov't Sur-Reply at 6. But, the Government argue that a FPAA is not a notice of deficiency for purposes of the *litigation* costs that BASR seeks in this case. Gov't Sur-Reply at 6–7.

Nevertheless, the Government insists that a FPAA is not a "letter of proposed deficiency" because a FPAA does not specify any amount of tax due, as required by the I.R.C. § 7522.  *See* I.R.C. § 7522(b)(3) (providing the required contents of "the [first] letter of proposed deficiency which allows the taxpayer an opportunity for administrative review in the Internal Revenue Service Office of Appeals.").  Under I.R.C. § 7522, the "letter of proposed deficiency," must:

> describe the basis for, and identify the amounts (*if any*) of, the tax due, interest, additional amounts, additions to the tax, and assessable penalties included in such notice. An inadequate description under the preceding sentence shall not invalidate such notice.

I.R.C. § 7522(a) (emphasis added).

In other words, I.R.C. § 7522 does not, as the Government argues, require that the first "letter of proposed deficiency" specify an amount of tax due.  Instead, this statute requires that the first "letter of proposed deficiency" specifies the amount of tax due, *if any*.

The Government also argues that an FPAA is not a "letter of proposed deficiency," because it is a "notice of a *final* partnership adjustment" that does not allow the taxpayer "an opportunity for administrative review" before the IRS Office of Appeals.  Gov't Opp. at 23 (citing I.R.C. § 7430(g)(2)(A)).  But, the Secretary of Treasury has promulgated regulations that provide that a taxpayer still gets the full benefit of the "qualified offer" provisions, even if the taxpayer receives only a "final" notice of deficiency and never receives such notice in proposed form.  *See* Treas. Reg. § 301.7430-7(e) example 14 (explaining that a taxpayer will be treated as making a "qualified offer" even if he only receives a final notice of deficiency).  Moreover, the issuance of an FPAA does allow for some administrative review; specifically, the case will be returned to the IRS Office of Appeals if partners opt out of court proceedings by settling with the IRS.  *See* I.R.C. § 6224(c) (governing settlement in TEFRA cases); Rev. Proc. 87-24, 1987-22 I.R.B. 23 (providing procedures pursuant to which the IRS Office of Appeals will consider settlement offers); *see also* Internal Revenue Manual ("I.R.M") 8.19.12.13 (providing procedures to follow "if the [FPAA] case is later returned to [the IRS Office of] Appeals to settle").

For these reasons, the court has determined that the date of a FPAA is tantamount to a "letter of proposed deficiency" that commences the "qualified offer period" under I.R.C. § 7430(g)(2)(A)–(B).

### iii.    The "Qualified Offer" Was Not A Sham.

Next, the Government also argues that, even if BASR's written offer was submitted during the "qualified offer period," the offer was a "sham" and not a "qualified offer" since it was for $1. Gov't Resp. at 27.  According to the Government, an offer of $1 was "wholly unreasonable and, on its face, constituted nothing of significance for [P]laintiff to part with," because a "victory [for the Government] would have resulted in increases in tax liability for BASR's . . . partners . . . collectively equal to the tax on the $6.6 million gain passed through to them by BASR from the sale of the Pettinatis' family business."  Gov't Resp. at 27.

24

I.R.C § 7430(c)(4)(E)(i) requires only that taxpayer's adjudged tax liability be equal to or less than the taxpayer's "qualified offer." I.R.C. § 7430(c)(4)(E)(i) ("A party . . . shall be treated as the prevailing party if the liability of the taxpayer pursuant to the judgment in the proceeding . . . is equal to or less than the liability of the taxpayer which would have been so determined if the United States had accepted a qualified offer of the party[.]"). This statute does not require any minimum amount or define the parameters of a "reasonable" offer, nor does it require that an offer be for a certain percentage of the taxpayer's purported liability. *See* I.R.C. § 7430(c)(4)(E)(i). Indeed, the Government has offered no amount that BASR could have offered that would have been "reasonable."

In this case, the final judgment of the court not to sustain the FPAA on the basis that the FPAA was untimely issued resulted in $0 of tax liability for BASR's partners. Because $1 is more than $0, the court has determined that BASR's "qualified offer" complied with I.R.C. § 7430.

## 2.    BASR "Incurred" The Fees Paid To Sutherland Asbill & Brennan LLP.

Because BASR is a "prevailing party," the court must next determine whether it "incurred" attorney fees, pursuant to I.R.C. § 7430(a)(2). The United States Court of Appeals for the Federal Circuit has held that a party "incurred" fees under the EAJA, only if that party had an obligation to pay those fees. *See Phillips v. Gen. Servs. Admin.*, 924 F.2d 1577, 1582–83 (Fed. Cir. 1991) (holding that attorney fees are "incurred" only when there is an "express or implied agreement that the fee award will be paid over to the legal representative"). Other federal appellate courts have held that, with respect to I.R.C § 7430, "fees are incurred when there is a legal obligation to pay them." *Estate of Palumbo*, 675 F.3d at 239–40; *see also Morisson v. Comm'r*, 565 F.3d 658, 662 (9th Cir. 2009) (holding that taxpayer incurs attorney fees "if he assumes either (1) a noncontingent obligation to repay the fees advanced on his behalf at some later time; or (2) a contingent obligation to repay the fees in the event of their eventual recovery").

In this case, BASR "incurred" litigation costs for purposes of I.R.C § 7430, because it has an obligation to pay the attorney and paralegal fees and other costs charged by Sutherland Asbill. The fee arrangement in this case was addressed to and signed by Mr. William F. Pettinati, Sr., Mrs. Virginia Pettinati, Mr. William F. Pettinati, Jr., and Mrs. Karie M. Pettinati. Gov't App. 3–8. The fee agreement did not mention that the fees were being advanced by the Pettinatis on behalf of BASR. Gov't App 3 ("Dear Mr. and Mrs. Pettinati [Jr.] . . . we are pleased to be retained by *you*. . . ." (emphasis added)); Gov't App 6 ("Dear Mr. and Mrs. Pettinati [Sr.] . . . we are pleased to be retained by *you*. . . ." (emphasis added)). Under the fee agreements, legal fees were billed to and paid by the Pettinatis. Gov't App. 9–218 (invoices addressed to Mr. and Mrs. Pettinati Sr.); Gov't App. 263–283 (credit card statements showing personal credit card payments to Sutherland Asbill made by Mr. Pettinati Sr.); Gov't App. 284–295 (credit card statements showing personal credit card payments to Sutherland Asbill made by Mr. Pettinati Jr.).

BASR's Partnership Agreement, however, states that the Managing Partner is entitled to "reimbursement for reasonable out-of-pocket expenses incurred by him on behalf of the Partnership or in pursuance of his duties as Managing Partner." Pl. Reply Ex. A § 2.5. In addition, Section 9.2(a) states that,

each Partner shall, to the extent permitted by law, be indemnified and held harmless by the Partnership from and against any and all losses, claims, damages, liabilities, joint and several, expenses (*including reasonable legal fees and expenses*), judgments, fines, settlements. and other amounts arising from any and all claims, costs, demands, actions, suits or proceedings civil, criminal, administrative, or investigative, in which the Partner may be involved.

Pl. Reply Ex. A § 9.2(a) (emphasis added).

Therefore, under the terms of the Partnership Agreement, BASR is obligated to repay its Partners for litigation costs incurred on its behalf.

Moreover, BASR is a general partnership organized in Texas and Section 9.11 of the Partnership Agreement states that "[t]his Agreement shall be governed by and construed in accordance with the laws of the State of Texas, including the [Texas Uniform Partnership] Act." Pl. Reply Ex. A. § 9.11.  In addition, the United States Supreme Court has held that "[i]n the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property."  *Nat'l Bank of Commerce*, 472 U.S. at 722 (internal quotation marks and citations omitted).  As such, Texas law governs the obligations that BASR owes to its partners.

Section 152.002 of the Texas Business Organizations Code ("TBOC")[18] provides, with respect to general partnerships, that:

[The] partnership agreement governs the relations of the partners and between the partners and the partnership. To the extent that the partnership agreement does not otherwise provide, this chapter and the other partnership provisions govern the relationship of the partners and between the partners and the partnership.

TEX. BUS. ORG. CODE § 152.002(a).  The TBOC applies unless the Partnership Agreement provides otherwise.[19]

---

[18] In 2003, the Texas Legislature adopted the TBOC in order to make Texas business organization law "more accessible and understandable" by "rearranging the statutes into a more logical order" and "eliminating repealed, duplicative, expired, executed, and other ineffective provisions." Adoption Of The Business Organizations Code, 2003 Tex. Sess. Law Serv. Ch. 182, § 1.001 (codified as TEX. BUS. ORG. CODE § 1.001).  The TBOC serves to replace "all the existing Texas Statutes relating to nonprofit and for-profit, private-entities" including the Texas Revised Partnership Act, the Texas Uniform Partnership Act, and other Texas statutes governing partnership entities.  Daryl B. Robertson et al., *Introduction To Texas Business Organization Code*, 38 TEX. J. BUS. L. 57, 63 (2002).

[19] TBOC Section 152.002(b) provides a list of statutory requirements that may not be fully waived by the Partnership Agreement, such as the duty of loyalty and the duty of care; these exceptions, however, do not apply in this case.  *See* TEX. BUS. ORG. CODE § 152.002(b).

In this case, BASR's Partnership Agreement states that the partners are entitled to reimbursement by the partnership for any legal expenses incurred on behalf of the partnership.  Pl. Reply Ex. A §§ 2.5, 9.2(a).

But, even if the Partnership Agreement did not expressly provide that the partners were entitled to reimbursement, the TBOC obligates BASR to repay its partners for litigation costs incurred on its behalf.  Under TBOC Section 11.052(b), any "domestic entity," *i.e.*, a business organization governed by the TBOC,[20] may prosecute or defend a civil, criminal, or administrative action while winding up its business.  *See* TEX. BUS. ORG. CODE § 11.052(b); *see also* TEX. BUS. ORG. CODE §§ 11.055(b) ("During the winding up process, a domestic entity may continue prosecuting or defending a court action or proceeding by or against the domestic entity."); 152.703(a) ("To the extent appropriate for winding up . . . a person winding up a partnership's business may take the actions specified in Sections 11.052 [and] 11.055.").  The TBOC specifically provides that a partnership is bound by obligations undertaken by its partners during the winding up process.  *See* TEX. BUS. ORG. CODE. § 152.704(1) ("After the occurrence of an event requiring winding up of the partnership business, a partnership is bound by a partner's act that . . . is appropriate for winding up[.]"), § 152.705 ("[T]he losses with respect to which a partner must contribute . . . include losses from an [obligation] incurred under Section 152.704."), § 152.708(a)(1) ("[E]ach partner shall contribute . . . the amount necessary to satisfy partnership obligations[.]").  Thus, although BASR is "no longer a going concern," it remains bound by legal obligations undertaken by its partners.  Pl. Reply at 4

Section 9.2(c) of BASR's Partnership Agreement limits indemnification "to the extent of any Partnership assets."  Pl. Ex. A. § 9.2(c).  In addition, with respect to additional capital contributions to the Partnership, Section 5.1 of the Partnership Agreement provides that "the existing Partners shall be permitted, but shall have no obligation, to make further contributions to the Partnership."  Pl. Ex. A. § 5.1.  But, the fact that BASR is currently unable to reimburse the partners for the litigation costs advanced on its behalf does not change the fact that BASR is obligated to reimburse is partners.  If the court awards BASR the litigation costs sought, BASR will in turn be obligated, under the terms of the Partnership Agreement and under Texas law, to indemnify the partners for the fees advanced upon its behalf.[21]

In the alternative, the Government argues that the "real-party-in-interest" doctrine bars an award of litigation costs.  *See Unification Church*, 762 F.2d at 1082.  In *Unification Church*, three individuals and the Unification Church ("the Church") sought award of attorney fees under the

---

[20] The TBOC defines the term "domestic entity" as "an organization formed under or the internal affairs of which are governed by this code."  TEX. BUS. ORG. CODE § 1.002(18).

[21] In Oral Argument on October 26, 2016, BASR's counsel represented that most of BASR's partners performed their obligations under the partnership agreement.  10/26/16 TR at 8 ("And if the Government is looking for some state law action like a suit or something or some formal agreement, that they performed, they each kicked in their share.").  The only partner that did not contribute fees was the Andrew Pettinati Gift Trust, and "that's because the trust has no assets and Andrew Pettinati is destitute."  10/26/16 TR at 9.

EAJA. *Id.* at 1079. Under the plaintiffs' fee arrangement with their attorney, only the Church was liable for payment of attorney fees, if the plaintiffs did not recover under the EAJA. *Id.* at 1082 ("The affidavit of plaintiffs' counsel . . . discloses that, although he was "retained" by the individual plaintiffs to represent them [before the court], his "arrangement" for payment for his services is solely with the Unification Church[.]" (internal citations and quotation marks omitted)). Because the Church was the beneficiary of any fee award, the federal appellate court held that it was the "real-party-in-interest" for purposes of the EAJA. *Id.* at 1083 ("If we deny fees, the Church will pay the fees. If we award fees, [the Government] will pay the fees. The Church is the beneficiary of any award of fees, not the individual appellants, and thus the Church can fairly be characterized as the real party in interest."). But since the Church had more than 500 employees, it was barred from receiving an award of litigation costs under Section 2412(d)(2)(B) of the EAJA, despite the other named plaintiffs being individuals with a net-worth below the statutory threshold. *Id.* at 1092.

In this case, however, BASR is obligated to pay the litigation costs under Texas law and therefore is the "real-party-in-interest" with respect to the litigation costs, if the court-awarded litigation costs are denied. *See Unification Church*, 762 F.2d at 1082 (holding that "the court shall consider only the qualification[s] . . . of those parties that will be themselves liable for fees if court-awarded fees are denied."). For these reasons, the court has determined the "real-party-in-interest" doctrine is not a bar to recovery.

Because BASR was the "prevailing party," that "incurred" the litigations costs, the court need not consider the net worth of BASR's individual partners, *i.e.*, William Pettinati, Sr., Virginia Pettinati, The Pettinati 1998 Gift Trust f/b/o William F. Pettinati, Jr. ("the 1998 Gift Trust"), and The Pettinati 1998 Gift Trust f/b/o Andrew Pettinati, when determining whether an award is permissible under I.R.C. § 7430.[22]  *Cf.* Gov't Opp. at 9–13 (arguing that, even if BASR could be a considered a "party," it did not "incur" the litigation costs at issue, because the "real-parties-in-interest" were the individual members of the Pettinati family).

In addition, the Government's argument that William F. Pettinati, Jr. paid a portion of Sutherland Asbill's fees "on his own behalf as the interested beneficiary of the Pettinati 1998 Gift

---

[22] BASR asserted in the May 9, 2016 Reply that BASR's partners were Bingle Investments, LLC, Falba Investments LLC, Winding Oak LLC, and Watermill Investments LLC. Pl. Reply at 7. This assertion, however, is contradicted by the terms of the Partnership Agreement, that states:

> THIS AGREEMENT OF GENERAL PARTNERSHIP for BASR PARTNERSHIP, dated as of May 24, 1999 (the "Agreement"), by and between WILLIAM F. PETTINATI, SR.; VIRGINIA PETTINATI; WILLIAM F. PETTINATI, JR., as Trustee of the Pettinati 1998 Gift Trust for William F. Pettinati, Jr.; and ANDREW PETTINATI, as Trustee of the Pettinati 1998 Gift Trust for Andrew P. Pettinati (herein collectively referred to as the "Partners", and individually, a "Partner").

Pl. Reply. Ex. A. at 1.

Trust for William F. Pettinati Jr." and not as the trustee of that same trust, is irrelevant, because, in the judgment of the court, the fees in this case were "incurred" by BASR, so the court need not consider the net-worth of its individual partners. Gov't Sur-Reply at 3 (arguing that William F. Pettinati, Jr. paid fees on his own behalf, as opposed to as trustee); Gov't Opp. at 13–15 (same). But, in any event, Mr. Pettinati, Jr. was not a partner in BASR; the 1998 Gift Trust was. Mr. Pettinati, Jr. was, as trustee, empowered under the 1998 Trust Agreement to "commence or defend in the sole discretion of the Trustee, *at the expense of the trusts*, such litigation with respect to such trust estates as the Trustee considers advisable." Gov't App. at 238 (containing § 4.1(r) of the 1998 Trust Agreement). Mr. Pettinati, Jr. exercised that trustee power to defend BASR's 1999 tax returns and the 1998 Gift Trust's tax liability.

### 3.    BASR's Litigation Costs Are "Reasonable."

Because BASR is a "prevailing party," that "incurred" litigation costs, the next step in the court's analysis to determine whether the litigation costs requested for this case are "reasonable." I.R.C. § 7430 provides that a "prevailing party" may be awarded "*reasonable* litigation costs" incurred during a tax case. *See* I.R.C. § 7430(a)(2) (emphasis added)). The United States Court of Appeals for the Federal Circuit has held that the court has "broad discretion" in determining whether litigation costs requested are "reasonable." *See Wagner v. Shinseki*, 640 F.3d 1255, 1261 (Fed. Cir. 2011) (holding that a court has broad discretion in awarding attorney fees under the EAJA, but is not required to make an award in all cases where a party seeks supplemental or increased fees).

### a.    BASR's Attorneys Spent A "Reasonable" Number Of Hours On This Case.

BASR requests fees for: 413.7 hours in 2012; 171.9 hours in 2013; 124.1 hours in 2014; 39 hours in 2015; and 44.1 hours in 2016. Pl. Mem. at 8.

The Government objects to fees for the 69.4 attorney hours, and 8.3 paralegal hours, spent on: (1) the September 4, 2012 Motion To Compel (ECF No. 22) that court denied; (2) opposing the Government's successful September 4, 2012 Motion For Protective Order (ECF No. 23); and (3) preparing for a telephone status conference convened by the court on September 6, 2012. Gov't Opp. at 39 (citing *Miller*, 983 F.2d at 861). In *Miller*, the federal appellate court disallowed fees for time spent on unsuccessful motions. *Id.*

Whether a motion was successful affects whether time spent preparing it was reasonably spent, but is not the only factor that a federal court may consider. For example, the United States Court of Appeals for the Fifth Circuit has allowed for recovery of attorney fees under I.R.C § 7430 for time spent preparing an *unfiled* summary judgment motion, determining it was reasonable as it allowed the attorney to organize his thoughts and trial strategy. *See Ragan v. Comm'r*, 210 F.3d 514, 520 (5th Cir. 2000) (determining that an attorney could recover fees for time spent preparing an unfiled summary judgment motion because the time spent was not "wasted," and helped him prepare for trial). In this case, it was not unreasonable for BASR to seek or oppose discovery or prepare for a court conference.

Based upon the records submitted to the court and the November 9, 2016 Declaration of Timothy R. Lavender, the court has determined that BASR's attorneys reasonably spent the following amount of hours on this case: 360.1 hours in 2012; 158.5 hours in 2013; 117 hours in 2014; 38.3 hours in 2015; and 44 hours in 2016. Pl. Mem. Ex. D; Pl. Reply Ex. E; *see also* 11/9/2016 Lavender Decl. ¶ 4 ("Based upon my review, it is my opinion that the time spent by Sutherland [Asbill] . . . was both appropriate and reasonable[.]").[23]

Under I.R.C. § 7430(c)(1)(B)(iii), a "prevailing party" may recover "reasonable" attorney fees at a set statutory rate, indexed for cost of living adjustments.[24]  When fees for the hours spent in this case are calculated at the relevant statutory rate, the court has determined that BASR is owed a total of $133,623 for attorney fees. [25]

### b.  BASR May Recover "Reasonable" Supplemental Fees.

BASR requests supplemental attorney fees for the time spent preparing the initial March 7, 2016 Motion For Litigation Costs and subsequent litigation.  A party may recover a supplemental fee award for time expended defending a fee request made under either the EAJA or under I.R.C § 7430. Pl. Reply at 22; Pl. Supp. Mem. at 2; *see also Wagner*, 640 F.3d at 1262 (holding that the United States Court of Appeals for Veterans Claims abused its discretion denying a request for supplemental attorney fees, when plaintiff successfully defended part of his EAJA fee request); *Larsen*, 39 Fed. Cl. at 171 (determining that plaintiff may be awarded fees pursuant to I.R.C § 7430 that "relate to the present dispute over plaintiff's general entitlement to fees and costs.").  When calculating a supplemental fee award, a court is required to consider the

---

[23] The court has deducted the 53.6 hours in 2012, the 13.4 hours in 2013, the 7.1 hours in 2014, and the 0.5 hours in 2015 that Sutherland Asbill spent in connection with proceedings before the IRS or the United States Tax Court.  Pl. Reply Ex. E.  In addition, the court has deducted an additional .2 hours in 2015 and .1 hours in 2016 that the court determined was spent in connection with United States Tax Court proceedings upon review of Plaintiff's Exhibits.  Pl. Mem. Ex. D at 26 (12/2/2015 entry for .2 hours for "Attention to multiple Tax Court notices; email to clients"); Pl. Mem Ex. D at 27 (2/11/2016 entry for .1 hours for "Attention to Tax Court orders on CDP cases").  *See Oliveira v. United States*, 827 F.2d 735, 744 (Fed. Cir. 1987) (holding that, pursuant to the EAJA, courts may not award "expenses of an attorney that are not incurred or expended solely or exclusively in connection with the case before the court.").

[24] For 2012, 2013, 2014, 2015, and 2016, the statutory rate was $180, $190, $190, $200, and $200 respectively.  *See* I.R.C. § 7430(c)(1); Rev. Proc. 2011-52, 2011-45 I.R.B. 701; Rev. Proc. 2012-41, 2012-45 I.R.B. 539; Rev. Proc. 2013-35, 2013-47 I.R.B. 537; Rev. Proc. 2014-61, 2014-47 I.R.B. 860; Rev. Proc. 2015-53, 2015-44 IRB 615.

[25] For 2012, 360.1 hours were multiplied by the rate of $180, leading to a total of $64,818. This same process was followed for each of the following years, *i.e.*, 158.5 hours were multiplied by $190, resulting in $30,115 for 2013; 117 hours were multiplied by $190, resulting in $22,230 for 2014; 38.3 hours were multiplied by $200 resulting in $7,660 for 2015; and 44 hours were multiplied by $200 resulting in $8,800 for 2016.

relationship between the amount of the fee award and the results obtained through the attorney fees application. *See Wagner*, 640 F.3d at 1259 (citing *Jean*, 496 U.S. at 163 n. 10).

In this case, BASR has successfully defended the March 7, 2016 Motion for Litigation Costs almost in its entirety, with the exception of the litigation costs incurred in non-United States Court of Federal Claims proceedings. Otherwise, the court has determined that the amount of time spent defending the March 7, 2016 Motion for Litigation Costs was reasonable.

For these reasons, the court has determined that BASR may recover supplemental fees as follows: 24.9 partner hours and 59.6 associate hours spent from February 23, 2016 to May 8, 2016 (Pl. Reply Ex. D); and an additional 24.6 partner hours and 6.3 associate hours, incurred from May 4, 2016 to October 25, 2016 (Pl. Supp. Mem. Ex. A). At the statutory rate for 2016,[26] these additional 115.4 attorney hours result in an additional $23,080 in fees, for a total attorney fee award at the statutory rate in the amount of $156,703.

### c.     The Requested Increase In The Statutory Rate Set Forth In I.R.C. § 7430(c)(1)(B)(iii) Is "Reasonable."

Congress has authorized the court to award attorney fees at a rate in excess of the statutory rate, if the court "determines that a special factor, such as the limited availability of qualified attorneys for such proceeding, the difficulty of the issues presented in the case, or the local availability of tax expertise, justifies a higher rate." I.R.C. § 7430(c)(1)(B)(iii). In this case, BASR argues that an increase above the statutory rate is justified, and requests fees at a rate of $400 per hour for time billed by Sutherland Asbill's partners and a rate of $250 per hour for time billed by Sutherland Asbill's associates. Pl. Mem. at 9. BASR argues this increase is justified, because: (1) BASR's partners were unable to locate qualified tax counsel, either locally or nationally, that would undertake representation at a $200 or less per hour rate; and (2) the legal issues were difficult, novel and complex. Pl. Mem. at 8–9; Pl. Mem. Ex. B (3/7/16 Affidavits of William F. Pettinati, Sr. and William F. Pettinati, Jr.). The Government, however, insists that the legal issues were not difficult or complex, and that BASR has not established that there were no available attorneys in either the Houston, Texas area (where William F. Pettinati, Jr. lives) or in the Washington, D.C. area (where the United States Court of Federal Claims is located). Gov't Opp. at 31–34; Gov't Supp. Resp. at 2–3.

With respect to BASR's first argument, the United States Court of Appeals for the Fifth Circuit has held that the "limited availability of qualified attorneys for such proceedings" factor refers only to attorneys possessing some "unique 'nonlegal or technical' abilities that contribute to the limited availability of attorneys capable of handling the litigation." *Cervin v. Comm'r of Internal Revenue*, 200 F.3d 351, 353 (5th Cir. 2000). In *Cervin,* the court rejected the taxpayer's claim that expertise in tax law and Texas state law qualified as a special factor justifying an increase in the statutory maximum. *Id.* In addition, a federal court has construed the "limited availability of qualified attorneys" to mean "an actual shortage of qualified attorneys who could handle the case *rather than an inability to retain qualified counsel willing to take on the representation at the statutory maximum hourly rate.*" *U.S. v. Guess*, 436 F. Supp. 2d 1143, 1155

---

[26] *See* Rev. Proc. 2015-53, 2015-44 IRB 615 ("For fees incurred in calendar year 2016, the attorney fee award limitation under § 7430(c)(l)(B)(iii) is $200 per hour.").

(S.D. Cal. 2006) (emphasis added).  Therefore, although BASR provided affidavits showing that BASR's partners were unable to locate attorneys willing to handle this case at or below the statutory rate, this does not qualify as a "special factor" justifying an increase in the statutory maximum rate.  Pl. Mem. Ex. B (3/7/16 Affidavit of William Pettinati, Jr., explaining that "I was unable to locate counsel, locally or nationally, who would charge less than $200 an hour.").

With respect to BASR's second argument, Treasury Regulation § 301.7430–4 provides guidance for the IRS about when to authorize "reasonable administrative costs" under the "difficulty of the issues" special factor, and provides that the following factors should be considered:

(1) The number of different provisions of law involved in each issue.
(2) *The complexity of the particular provision or provisions of law involved in each issue.*
(3) The number of factual issues present in the proceeding.
(4) The complexity of the factual issues present in the proceeding.

Treas. Reg. § 301.7430–4(b)(3)(iii) (emphasis added).[27]

In the court's judgment, BASR's counsel was faced with complex issues of law regarding the interaction of two separate I.R.C. statutes of limitation at both the trial and appellate levels.  *See BASR Partnership*, 795 F.3d at 1342–1350; *see also id.* at 1351–58 (O'Malley, C.J., concurring in judgment but offering a different interpretation of the statutes at issue).  In addition, coming to the correct conclusion required the United States Court of Appeals for the Federal Circuit to examine "the overall statutory scheme of the [Internal Revenue] Code, the case law, and [I.R.C. Section] 6501(c)(1)'s historical roots." *Id.* at 1342.  For these reasons the court has determined that the complex, novel, and difficult issues presented warrant an increase to $400 an hour for partner time and $250 an hour for associate time.

The Government, however, insists that BASR cannot recover any supplemental fees at a rate above the statutory maximum, because I.R.C § 7430 requires a separate showing of a "special factor" to justify an increased rate for supplemental fees incurred with respect to the fee litigation, apart from any special factors affecting the underlying tax litigation.  Gov't Supp. Resp. at 4 (citing *Powers v. Comm'r*, 43 F.3d 172, 183 (5th Cir. 1995) (holding that higher rate would not be awarded for supplemental fees, because there was no showing that any special factor justifies an increased rate for litigating the attorney fees motion)).

---

[27] Although Treasury Regulation § 301.7430–4 governs rate increases for *administrative costs* paid under I.R.C. § 7430, the Government argues that it should be relied upon for determining rate increases for litigation costs as well. Gov't. Opp. at 32.  This is inconsistent with the Government's position that a FPAA cannot be treated as a "letter of proposed deficiency" for the award of litigation costs, despite Treasury Regulation § 301.7430-3(c)(3) providing that a FPAA can be treated as a "letter of proposed deficiency" for purposes of the award of administrative costs.

In this case, the court has determined that the "special factors" to be considered include the "difficulty of the issues," as evidenced by the Government's arguments concerning numerous provisions of the Internal Revenue Code and Treasury Regulations,[28] requiring multiple filings and an oral argument.  For these reasons, the court has determined that BASR may recover fees at a $400 hourly rate for time spent on this case by partners and a $250 hourly rate for time spent on this case by associates.  At these increased rates, BASR's total award of attorney fees is $280,100.

### d.     The Paralegal Fees Are "Reasonable."

BASR also requests paralegal fees, at an hourly rate of $150, for 163.9 hours on this case, and an additional 3.2 hours on the subsequent fee litigation.  Pl. Supp. Mem. Ex. A; Pl. Mem. Ex. C at 4–11.  Paralegal work is compensable only if it otherwise would be required to be done by an attorney.  *See Miller*, 983 F.2d at 862 ("Work done by paralegals is compensable if it is work that would have been done by an attorney. If such hours were not compensable, then attorneys may be compelled to perform the duties that could otherwise be fulfilled by paralegals, thereby increasing the overall cost of legal services.").  In *Miller*, the prevailing party was awarded paralegal fees for library research to locate cases and preparing materials used by an attorney at oral argument.  *Id.*

In this case, Sutherland Asbill paralegals organized and proofed court filings that otherwise would have had to have been performed by an attorney.  For example, paralegals proofed and citechecked motions and briefs, electronically-filed documents, and organized case files.  Pl. Mem. Ex. C at 4–11.  The court has determined this work is a compensable litigation cost under I.R.C § 7430.  In addition, BASR is entitled to an additional 3.2 paralegal hours spent to review and revise the May 9, 2016 Reply.  Pl. Supp. Mem. Ex. A.  BASR, however, may not recover 4.6 paralegal hours related to proceedings before the United States Tax Court and the IRS.  Pl. Mem. Ex. C at 4, 6, 7, 8, 9.

With respect to the $150 paralegal hourly rate, the United States Supreme Court has held that, with respect to the EAJA, paralegal fees are recoverable at "prevailing market rates," up to the statutory maximum for attorney fees.  *See Richlin Sec. Service Co. v. Chertoff*, 553 U.S. 571, 587, 590 (2008).  The circumstances in this case present no reason to depart from this rule with respect to I.R.C § 7430.  *See Larsen*, 39 Fed. Cl. at 167 ("Although the EAJA and I.R.C. § 7430 differ slightly, the court has [determined] that case law on the EAJA may be instructive in interpreting I.R.C. § 7430, which was promulgated to remedy a gap in the EAJA's coverage of tax suits.").

For these reasons, the court has determined that the $150 hourly rate requested is "reasonable," and BASR is awarded $24,375 in paralegal fees.

---

[28] The number of the arguments raised by the Government was noticed by the court in oral argument.  10/26/16 TR at 26 (THE COURT: "I must say I was surprised at the number of arguments that the Government has raised . . . I've never seen a brief that was this long for a fee argument for the Government.").

e.      Other Litigation Costs Are "Reasonable."

BASR also requests $10,355.69 in other litigation costs.  Pl. Mem. Ex. C.  "Reasonable"
litigation costs include "photocopying, courier, travel, transcript/deposition, court filing, fax, and
Westlaw expenses."  *Larsen*, 39 Fed Cl. at 170.  In this case, BASR's requested litigation costs
include: court reporter fees (Pl. Mem. Ex. C at 1, 2); copying fees (Pl. Mem. Ex. C at 1); travel
expenses for depositions (Pl. Mem. Ex. C at 2); courier costs (Pl. Mem. Ex. C. at 2, 3); travel
expenses for oral argument (Pl. Mem. Ex. C at 3); and filing fees for notice of a Cross-Appeal to
the United States Court of Federal Claims (Pl. Mem. Ex. C at 2).  The court has determined that
these costs are reasonable, however, BASR not recover $120 for filing fees incurred at the United
States Tax Court.  Pl. Mem. Ex. C at 1.  The court has determined that BASR may recover
$10,235.69 in other litigation costs.

4.      BASR Meets The Requirements of I.R.C § 7430(b). [29]

A "prevailing party" that has "incurred" "reasonable" litigation costs nevertheless may be
barred from recovering attorney and paralegal fees and other costs, under I.R.C § 7430(b).
Specifically, judgment for litigation costs may not be awarded if a "prevailing party" did not
exhaust IRS administrative remedies.  *See* I.R.C. § 7430(b)(1).  In addition, a "prevailing party"

---

[29] I.R.C.§ 7430(b) provides:

(b) Limitations.—
    (1) Requirement that administrative remedies be exhausted.--A judgment for
    reasonable litigation costs shall not be awarded under subsection (a) in any
    court proceeding unless the court determines that the prevailing party has
    exhausted the administrative remedies available to such party within the
    Internal Revenue Service. Any failure to agree to an extension of the time
    for the assessment of any tax shall not be taken into account for purposes of
    determining whether the prevailing party meets the requirements of the
    preceding sentence.
    (2) Only costs allocable to the United States.--An award under subsection (a)
    shall be made only for reasonable litigation and administrative costs which
    are allocable to the United States and not to any other party.
    (3) Costs denied where party prevailing protracts proceedings.--No award
    for reasonable litigation and administrative costs may be made under
    subsection (a) with respect to any portion of the administrative or court
    proceeding during which the prevailing party has unreasonably protracted
    such proceeding.
    (4) Period for applying to IRS for administrative costs.--An award may be
    made under subsection (a) by the Internal Revenue Service for reasonable
    administrative costs only if the prevailing party files an application with the
    Internal Revenue Service for such costs before the 91st day after the date on
    which the final decision of the Internal Revenue Service as to the
    determination of the tax, interest, or penalty is mailed to such party.

I.R.C. § 7430(b).

can only recover litigation costs allocable to the United States. *See* I.R.C. § 7430(b)(2). Moreover, no litigation costs may be awarded for any portion of court proceeding that has been "unreasonably protracted" by a "prevailing party." *See* I.R.C. § 7430(b)(3).

Exhaustion requires an appeal to the IRS Office Of Appeals. *See* Treas. Reg. § 301.7430-1(b) (providing that exhaustion of administrative remedies requires an appeal to the IRS Office Of Appeals). The exhaustion requirement, however, applies only to tax matters "for which an Appeals office conference is available." Treas. Reg. § 301.7430-1(b). In this case, the IRS issued the FPAA because the IRS determined this case concerned a "Son of Boss" transaction. But, the IRS has determined that "Appeals Office consideration will not be available for Son of Boss Transactions." 2004-21 I.R.B. 965. Therefore, BASR has exhausted all administrative remedies.

In addition, BASR did not unreasonably protract the proceeding, and instead attempted to resolve the matter by making a "qualified offer" and then later filing a Motion For Summary Judgment. I.R.C. § 7430(b)(3). And, all of the costs in this case are "allocable" to the United States, because they were incurred after the Government did not accept BASR's "qualified offer." I.R.C. § 7430(b)(2). For these reasons, the court has determined that I.RC. § 7430(b) does not apply in this case.

### 5. The Court's Award Of Litigation Costs.

Finally, the Government asks the court to exercise its discretion to deny an award of litigation costs and attorney fees to BASR. Gov't Resp. at 29. The court has determined not to exercise its discretion in this fashion.

BASR requests: 497.1 partner hours at a $400 hourly rate, and 411.1 associate hours at a $250 hourly rate. Pl. Mem. Ex. D, Pl. Reply Ex. D., Pl. Supp. Mem. Ex. A. Of these amounts, BASR incurred 18.6 hours of partner time and 56.3 hours of associate time on IRS and United States Tax Court proceedings. Pl. Reply Ex. E; Pl. Me. Ex. D 26–27. As previously discussed, the total of $301,615 in attorney fees requested needs to be adjusted downwards by $21,515 to a total of $280,100. In addition, BASR requests $25,065 in paralegal fees and $10,355.69 in other litigation costs. Pl. Mem. Ex. C; Pl. Supp. Mem. Ex. A. Likewise, the paralegal fees and other litigation costs need to be adjusted downwards by $690 and $120, respectively, to a total of $24,375 for paralegal fees and $10,235.69 in litigation costs.

In sum, the total amount of the award is $314,710.69.

III.    CONCLUSION.

For these reasons, BASR's March 7, 2016 Motion For Litigations Costs is granted, in part. The Clerk of the United States Court of Federal Claims is directed to enter judgment in favor of BASR in this case, in the amount of $314,710.69.

**IT IS SO ORDERED.**

s/ Susan G. Braden
**SUSAN G. BRADEN**
**Judge**